STEBER, Administrator, Respondent, vs. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, Appellant.

*March 12—March 30, 1909.*

*Railroads: Negligence: Killing of car-repairer: Duty of employer to guard against dangers: Rules and regulations: Signal flag on track: Questions for jury: Special verdict: Specific questions: Harmless error: Instructions to jury: Credibility of witnesses: Curing error.*

1. The business of repairing cars standing on repair tracks should be conducted by a railway company with such precautions, including the making and enforcing of proper rules and regulations, as will reasonably guard employees engaged therein against avoidable dangers.

2. In an action for the death of a car-repairer who was killed by the switching of other cars against the one under which he was at work, it is *held* upon the evidence that it was a ques-

tion for the jury whether a signal flag or board had been put up by the deceased before such car, as required by the rule of the railway company.

3. Refusal to submit in the special verdict specific questions as to whether the deceased had placed such a car-repairer's signal on the track before he went to work, and whether such signal was in place when the other cars were switched onto that track, was not prejudicial error in this case, in view of the instructions given on that subject in submitting the general question as to contributory negligence of the deceased; but submission of such specific questions would have been proper and helpful.

4. A charge to the jury which in effect told them they might reject the testimony of any witness if they found reasons satisfactory to their own minds for so doing, even though it had been admitted by the court as relevant and material to the issues, was erroneous.

5. A charge that if the jury found that the interest of a witness in the case was such that he testified falsely they might throw out his testimony, was erroneous,—the true rule being that if the jury believed a witness had testified wilfully falsely in regard to any matter material to the case they had the right, if they saw fit, to reject all of the evidence of such witness not corroborated by some credible evidence produced.

6. The errors committed in giving the above-mentioned separate and distinct portions of the charge in submitting separate issues, were not cured by subsequent general instruction to the jury respecting their duty to determine the weight of evidence and credibility of witnesses.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an action to recover damages for the death of Jacob Zahradnik, a car-repairer employed by the defendant. The general direction of the railroad tracks maintained by the defendant at Antigo, Wisconsin, is north and south. On the east lie its main track and switch tracks and on the west lie the machine-shop tracks. Between these sets of tracks lie three parallel tracks which are used as repair tracks. These repair tracks are numbered from the east and are known as Nos. 1, 2, and 3. These tracks are connected at the north ends by a lead track and thereby with the other tracks. On the morning of June 7, 1906, the intestate was engaged in re-

pairing a defective brake-beam on the southernmost of seven cars on repair track No. 1.   He had been working there for ten or fifteen minutes when other cars were backed onto this track by a switching crew.   The cars on the track were struck, and the car under which the decedent was working was moved about twenty inches, one of the wheels passed over him, and he was instantly killed.

The defendant claims that the deceased failed to observe a rule of the company requiring car-repairers to place a blue flag or board before the car or train on which such repairers may be at work.   The members of the switching crew testified that they had looked but saw no flag, and that in fact none was there.   On behalf of the plaintiff an uncle of the deceased testified that shortly before the accident he passed by this place and observed that a flag was in front of the cars on track No. 1.   The evidence as to how long before the accident this witness passed by and whether or not this was previous to the time during which the deceased was occupied with this particular bit of repairing, is not very definite; yet it tends to show that the signals described by the witness were in place preparatory to repairing the cars on track No. 1 a short time before the accident.

The jury returned a special verdict, finding, in answer to the questions therein, that Zahradnik's death was proximately caused by the negligence of the defendant and that he was not guilty of any want of ordinary care contributing thereto. This is an appeal from the judgment on the verdict as so found.

*Edward M. Hyzer,* for the appellant.

For the respondent there was a brief by *T. W. Hogan* and *Goodrick & Goodrick,* and oral argument by *Mr. Hogan* and *Mr. A. B. Goodrick.*

SIEBECKER, J.   The court properly refused to nonsuit the plaintiff.   At this stage of the trial it appeared that the de-

ceased had been employed as a car-repairer for the defendant and at the time of the accident was employed by its direction under a car placed on one of its repair tracks in defendant's yards, and that while so engaged in his duty another car was switched onto this repair track and collided with the car under which deceased was at work, moving it and thereby causing his death. This state of the proof was pregnant with a carelessness in the conduct of defendant's business which exposed deceased to dangers and constituted negligence warranting the conclusion that it proximately caused the accident and injury. The business at which deceased was engaged was independent of that performed by the switchmen, and the exercise of due care required that it be conducted by the master with such precautions as to reasonably guard deceased against such dangers. Among such precautions are the making and enforcing of such rules and regulations for its conduct as to afford reasonable protection against avoidable dangers to those engaged in the business. The facts presented by the evidence when the nonsuit was determined were such that the jury would have been warranted in finding that defendant negligently omitted to promulgate any rules or regulations for warning switchmen and the decedent of the dangers incident to conducting the business they were engaged in, and which in the exercise of reasonable care would have guarded them against such dangers. *Polaski v. Pittsburgh C. D. Co.* 134 Wis. 259, 114 N. W. 437.

The appellant claims there is no credible evidence tending to show that the car which decedent was repairing when he was injured was protected by a blue flag or board signal to warn the other employees, as required by its established rules, of his dangerous situation. It appears that the defendant had an established rule that such signals were to be placed on the repair tracks in front of the cars thereon when repairing was being done to warn others not to move or disturb them, thus avoiding injury to car-repairers, and that it was

the duty of the car-repairers to put up such signals or to see that they were up for their protection. The contention is that no such signals were placed on the repair track or cars thereon while decedent was at work repairing the car, by which he was injured by switching another car against it and thereby causing it to run over him.

The question is whether there was evidence tending to show that these signals were in place as called for by the rule. The testimony of defendant's witnesses on this point is clear and direct, is to the effect that no such signal flag or board had been put up as the established rule required, and defendant urges that there is no credible evidence to contradict it. The argument is that the only testimony bearing on this subject in conflict therewith is that of the witness Steffen, which, it is urged, is insufficient to raise an issue of fact for the jury. The record shows as to this testimony that this witness, an uncle of the deceased, was employed with his brother by the defendant as a section hand; that shortly before the accident the witness and his brother returned to the yard on a handcar to have a broken jack repaired at the shop in the yards; that when they came near the lead track above mentioned he looked down the repair tracks toward the shop with a view to passing over one of the repair tracks to get near the shop; and that he then saw a signal flag up on each of the repair tracks, and therefore did not attempt to run on either of them, but passed over a yard track, he doing the propelling of the car while his brother opened and closed the switches. It is admitted that this brother did not observe any signal flags while going on this trip. Steffen also testified that he observed the signal flags again as he proceeded on the switch track to the shop. The evidence of another employee is that he had observed the deceased coming from the north end of the cars on the car track at which he worked when injured and where the flag would be placed under the rule. The foreman at the inquest stated in effect that the repair hands put up a signal flag on

the track where deceased was injured that morning before they started repairing cars and that it was not removed before the accident. This he denied on the trial. In the light of this evidence we cannot say that there was no credible evidence for a jury to find that a signal flag was up on the repair track or cars where plaintiff was working when he was injured. We are persuaded that the substantial conflict in the evidence on this point was for solution by a jury and that the court did not err in submitting the issue to them.

Defendant requested the court to submit as part of the special verdict a direct inquiry as to whether or not the deceased placed such a car-repairer's signal on the track or cars before he went to work, and whether or not one was in place when the switching crew switched cars onto this track. The court rejected the request, but submitted the general question of whether or not the deceased was guilty of contributory negligence, and instructed the jury that an affirmative answer to the question so submitted depended on whether or not there was a warning signal on the track or cars at the north end of the track. In the light of this instruction their attention was specifically directed to the point that they must find that the warning signal was up as required by the rule to find decedent free from contributory negligence. In effect this covers the exact inquiry embraced in the requested questions, and it must be held that the jury expressly found by their answer to the fourth question of the special verdict that the signal was placed as the rule required. Under the instructions the verdict necessarily covers the specific issues of fact embraced in the requested questions.

Under the circumstances the refusal to submit the requested questions is no prejudicial error. It should, however, not be understood that it would have been improper if the trial court had required the jury to answer the requested questions in addition to those embraced in the verdict. It appears that the issuable fact on this phase of the case practi-

cally involved only the point as to whether or not the car-repairer's signal had been put up as required by the rule of the company, which was the exact inquiry of the requested questions.  In view of the evidence the court very appropri-ately might have required the jury to find specifically upon this fact.  Submission of it and a direct answer thereto, it seems to us, would have aided the court and have made the record show clearly that the jury specifically resolved this controverted and material issue of fact—a desirable result under the circumstances.

An exception is urged to the following instruction:

"You may reject the testimony of any witness in this case if you find reasons satisfactory to your mind for doing so, but you must have those reasons.  You cannot of your whim or caprice throw out testimony of any witness who has testified here.  If you find anything in the manner in which a witness gave his testimony, if you find that his interest in the case is such that he testified falsely, or if you find he was mistaken, or if you find any other satisfactory reason to you for throw-ing out his testimony, you may do so.  But you must not do it unless you find such reason."

This is claimed to be erroneous because the jury were thereby informed that they could disregard and reject tes-timony upon any speculative or imaginary ground, and in ef-fect the jury were authorized to reject relevant testimony ad-duced by the parties, which they were entitled to have con-sidered by the jury in resolving the issues of fact.  The in-struction confuses the function of the jury to determine the probative effect of testimony legally before them with that of the court in determining its admissibility as evidence bearing on the fact in controversy.  A part of the instruction informs the jury on considerations going to the weight or probative force of the evidence, while another part authorizes them to totally reject evidence for reasons satisfactory to them, though it had been admitted as relevant and material to the issues. This is plainly erroneous, in that it informed the jury that they were authorized and permitted to wholly disregard evi-

dence for speculative and unfounded reasons, though the court had received and submitted it to them as relevant and material evidence.

It is further averred that the instruction specifically misstates the rule governing the rejection of the testimony of a witness who wilfully testifies falsely. They were informed that if they found a witness whose interest in the case was such that he testified falsely, "they could reject his testimony." This is an erroneous statement of the rule for their guidance under such circumstances. The rule stated in *Allen v. Murray,* 87 Wis. 41, 57 N. W. 979, as correct and appropriate to guide the jury under such circumstances is, that "if they believed a witness had testified wilfully falsely in regard to any matter material to the case, the jury had the right, if they saw fit, to reject all of the evidence of such witness not corroborated by some credible evidence produced." See, also, *Hart v. Godkin,* 122 Wis. 646, 100 N. W. 1057; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38, 71 N. W. 69.

It is argued that the subsequent instruction given to the jury respecting their duty to determine the weight of evidence and credibility of witnesses corrected any erroneous impression communicated to the jury in the above-quoted instruction. We find no merit in this contention. These portions of the charge are separate and distinct and were applied in submitting separate issues. The nature of the controversy and the sharp conflicts in the testimony respecting compliance with the rule as to placing warning signals made it especially important that the jury give proper consideration to all the evidence and its probative force. These erroneous instructions would naturally tend to mislead the jury by permitting them to disregard proper and material testimony in resolving this dispute. Such a result might seriously prejudice appellant. We are constrained to hold that the error committed necessitates a new trial.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.