[No. 7676.   Decided May 26, 1909.]

FRANCIS M. RYAN, *by his Guardian Ad Litem M. Ryan,*
*Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY
*et al., Respondents.*[1]

MASTER AND SERVANT—YOUTHFUL EMPLOYEE—CONTRIBUTORY NEG-
LIGENCE. A boy about seventeen years of age, learning the position
of call boy in and about freight yards, is guilty of contributory neg-
ligence, as a matter of law, in attempting to cross a string of freight
cars in the yard when there was a safe way around them, knowing
that switching was going on and that the cars were liable to be
moved at any time, and he evidently realized the danger; and where
for two years he had been working on his own account, and was a
man in experience.

SAME—NEGLIGENCE OF MASTER—FAILURE TO WARN—RAILROADS—
SIGNALS. In such a case the company is not guilty of negligence in
sending the boy into private switch yards where none but employees
were allowed, without warning him, nor in switching cars without
whistles and signals which would only create confusion in the yards.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered June 4, 1908, in favor of the
defendants, by direction of the court, after a trial before the
court and a jury, dismissing an action for personal injuries.
Affirmed.

*Vince H. Faben* and *S. H. Kelleran,* for appellant.

*Carroll B. Graves,* for respondents.

MOUNT, J.—This action was brought by a minor, through
his father as guardian *ad litem,* to recover damages on ac-
count of personal injuries received while in the employ of
the Northern Pacific Railway Company. The cause was
tried to the court and a jury. At the close of the evidence,
the court sustained defendants' motion for a directed ver-
dict, and dismissed the action. The plaintiff appeals.

There is no dispute in the evidence. The facts are, in
substance, as follows: The appellant, Francis M. Ryan,

[1]Reported in 101 Pac. 880.

was employed by the respondent company as call boy in its freight yard office in Seattle, to take the place of one Harvey Kelly who desired a leave of absence for a short time. The employment of the appellant was obtained upon the recommendation of an older brother who was at that time employed as a clerk in the freight office. At the time of his employment, which was August 21, 1906, the appellant was sixteen years and ten months of age. He was small for his age, but was a strong, healthy boy. He was directed to follow Mr. Kelly, who would show him and tell him about what his duties were, and he was to take Kelly's place, and his pay was to begin when Kelly should quit.

During the afternoon of August 21 and the day of the 22d, and up until about four o'clock of the 23d of August, 1906, the appellant followed Kelly around and was shown his duties, which were to deliver messages, bills, orders, etc., to the different freight offices in Seattle, and to call crews for the trains when directed. The clerks in the yard office deposited in a box kept for that purpose the messages and orders to be delivered by the call boy. There were six clerks in this office, and all their work was in connection with the freight yards. These yards were upon the private property of the respondent company. They were not crossed by any public streets, and no one was permitted therein except employees. The yards were used for storing freight cars, for breaking up trains arriving, and for making up trains to leave the city. All of the freight trains of the respondent company were handled in these yards by switch engines. There were twenty-one switch and storage tracks, each holding about fifty cars, and there were usually from eight hundred to a thousand cars in the yard. Over these tracks there were operated at all times, both day and night, from six to twenty-three switch engines. Each switch engine had its own crew, consisting of five men, viz: an engineer, fireman, foreman, and two helpers. These crews received their orders from the yard office, and each had a separate district to

work in.   They governed themselves by silent signals, given by the hands during the day and by lanterns at night.   Cars were continually being taken out of storage tracks and shunted therein, without notice or warning of any kind.

On August 23, 1906, at about four o'clock in the afternoon, the call boy, Mr. Kelly, and the appellant had made the rounds of the offices and delivered their messages and orders, when Kelly was requested by one of the clerks in the yard office to tack some cards on certain cars in the yard. This work was properly the work of the car checkers and not of the call boy.   Kelly, however, agreed to do this as an accommodation to the clerk, thinking it would be a service to the company.   When Kelly started with the cards, the appellant followed him.   They went around the cars of the yard to the track where the cars were which were to be carded.   These cars were standing on a track known as No. 5.   After Kelly had tacked the cards on the cars and appellant had watched him do so, the two boys started to return to the office.   While on their way, they came to a string of about a dozen cars standing on track known as No. 14. Kelly started to go around this line of cars the way they had come, but, upon the suggestion of the appellant that it would be nearer to cross over the cars, they undertook to do so.   Kelly went through first, but as the appellant was in the act of passing through, a car was shunted onto that track against the string of cars, and appellant was thrown off the car which he was attempting to cross, and his right leg was run over by the car, necessitating amputation below the knee.   The way around the cars and the way the boys went in was perfectly safe.   From where the boys started to cross the cars they could not see the end of the line where the switch engine was working; but if they had stepped back ten or fifteen feet they could have seen the switch engine.

The appellant had been working for a period of about two years, free from parental control.   He worked for one year in the Post-Intelligencer office at eight dollars per

week. Thereafter he worked at the plumber's trade for eight months, and qualified himself as a plumber, but was not permitted to work at his trade because he was not then old enough to join the union. Thereafter he obtained employment in a shingle mill some distance out of Seattle, at two dollars per day, where he worked for a short time, and soon thereafter sought employment as a call boy with respondent company. He knew the system of switching the cars in the yard, although he said that was his first trip into the yard. He knew that the switch engines were continually shunting cars into the switches and taking them out. He knew there was a safe way back to the office the way they had come out and that there was nothing to prevent returning that way. He evidently realized the danger in crossing the cars, because he said there was danger in crossing the tracks at the end of the cars. Upon these facts the trial court was of the opinion that there was no negligence of the company shown, and that appellant assumed the risk of crossing the cars, and therefore directed a verdict for the respondent.

If the appellant in this case had been an adult, there can be no reasonable contention that he was not guilty of contributory negligence in attempting to cross a string of cars which he knew, or should have known, were liable to be moved at any time; especially when he was not directed to cross them, and when there was no necessity therefor, and when there was a safe way around the cars. But it is contended by the appellant that, because he was a boy, the question of his capacity and intelligence must be left to the jury, and several cases decided by this court are cited to that effect, among which are *Lorence v. Ellensburgh*, 13 Wash. 341, 43 Pac. 20, 52 Am. St. 42; *Kirkham v. Wheeler-Osgood Co.*, 39 Wash. 415, 81 Pac. 869, and *Kirby v. Wheeler-Osgood Co.*, 42 Wash. 610, 85 Pac. 62. In the first two of these cases the minors were mere children, one eight and the other twelve years of age. In the last-named case, the minor was

just entering upon his sixteenth year. In that case we said, at page 613:

"There is a time when a child is so young that the court can say, as a matter of law, that to employ him around dangerous machinery without fully instructing him as to the open and apparent dangers would be the grossest kind of negligence. So there comes a time in this same child's life when the court can say, as a matter of law, that a failure to warn him of the open and apparent dangers is not negligence. Between these two extremes, however, there is, and from the nature of things there must be, a debatable ground —a time when the inferences to be drawn from the fact are disputable—when the court cannot say as a matter of law that the omission to warn is or is not negligence. In such cases it is the province of the jury to draw the inference, and either party has the right to have the question submitted to them."

This is a clear statement of the rule in such cases. In that case we held, on account of the youth and inexperience of the boy, the question of assumed risk was one for the jury. But in this case, while the minor was a boy not quite seventeen years of age, he was a man in experience, and appears from his own testimony to have fully appreciated the danger. He, therefore, comes within the rule, "when the court can say, as a matter of law, that a failure to warn him of the open and apparent dangers is not negligence."

It is argued that the respondent was guilty of negligence on account of the manner in which the cars were handled in the yard, and for employing an inexperienced boy and assigning him to a dangerous place without warning him of the danger, and in directing him to follow Kelly without warning him especially of the dangers. The freight yards of the respondent were private yards. No one but employees were permitted therein. Any one knowing how the yards and cars were operated did not need any further warning. The fact that whistles were not sounded and bells were not rung did not tend to show negligence, because under the conditions there, where numerous engines were running backwards and

forwards, such sounds would only create confusion, and would afford no protection. No one was supposed to be about the cars except employees, who necessarily would know, immediately upon entering the yards, that cars were liable to be moved at any time without any warning. Even if the appellant was directed to go into the yards, he knew of the conditions and the places where he would be safe; and if he knew it was dangerous to cross a track where cars were not standing, as he testified he did, he must necessarily have known it was much more dangerous to cross over cars standing on such tracks. In view of the age and experience of the appellant as shown by his own evidence, we see no escape from the conclusion that his own negligence was the cause of his injury.

It is unnecessary to refer to the many authorities cited in the brief of both the appellant and respondents, for the rule is, where there is no dispute in the facts and where the court is satisfied that the appellant was a man in experience and understanding, as appears in this case, it is then the duty of the court to decide, as a matter of law, that a failure to warn him of apparent danger is not negligence. The trial court did so decide in this case. The judgment must therefore be affirmed.

RUDKIN, C. J., CROW, GOSE, FULLERTON, and CHADWICK, JJ., concur.

MORRIS and PARKER, JJ., took no part.