[Civ. No. 757. Third Appellate District.—December 31, 1910.]

## E. W. PAYNE, Respondent, v. OAKLAND TRACTION COMPANY, a Corporation, Appellant.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—NONSUIT—QUESTION OF LAW FOR COURT OR OF FACT FOR JURY.—In an action for injuries alleged to be due to the negligence of the defendant, the question whether the contributory negligence of the plaintiff is one of law for the court, requiring a nonsuit, depends upon his apparent negligence or lack of reasonable care upon undisputed facts; but, on the other hand, if the evidence adduced by plaintiff is conflicting, if there is some evidence on his behalf showing negligence of the defendant, and showing that plaintiff was not guilty of that degree of contributory negligence to which the cause of his injuries may directly or proximately be imputed, then the question is one of fact for the jury, and its conclusion is binding upon appeal.

ID.—INJURY TO MOTORMAN—ASSISTANCE IN REPAIR OF BRAKE IN PIT OF CAR-BARN—REQUEST OF REPAIRER—DUTY OF MOTORMAN—RULE OR CUSTOM—INJURY IN ASCENT.—Where a motorman, whose car was on schedule time, ran it into the car-barn for repair of a brake in the pit, whither he went at request of the repairer, as being "short-handed," to assist in the repair, it was the duty of the motor-

man to do what was reasonably necessary to get his car out on time, and it is immaterial whether or not, in such assistance, the motorman was acting strictly within the sphere of his duty as such, since no rule or custom forbade such action, but motormen frequently went into the pit to assist the repairer, and plaintiff was not a trespasser therein, nor injured therein, but was injured only while ascending carefully therefrom, by the careless removal of an apparently dead car.

ID.—RIGHT OF ASCENT—DUTY OF DEFENDANT—REASONABLE CARE.—The plaintiff having gone into the pit for the purpose stated, whether strictly in the line of his duty or not, had the right of ascent therefrom, and it was the duty of the defendant to exercise reasonable care in protecting him while ascending against injury, as the result of the negligent acts of his coemployees.

ID.—CHOICE OF ASCENT—PRESUMPTION—FINDING OF JURY—GOOD JUDGMENT—WANT OF NEGLIGENCE.—Where the jury by the verdict presumptively accepted the plaintiff's description of the conditions and circumstances surrounding him, they were authorized in concluding that he displayed good judgment in the choice of the place of his ascent, and that his injuries were not caused by contributory negligence in making such choice.

ID.—ACTUAL CHOICE OF MORE DANGEROUS WAY—APPARENTLY DEAD CAR—CARELESSNESS OF CONDUCTOR—DANGER NOT KNOWN.—It is only when a person chooses a dangerous way with knowledge of the danger that he can be charged with contributory negligence. Where plaintiff, while ascending the way chosen, saw a car on the track which was apparently dead, he cannot be charged with contributory negligence in taking that way, without any knowledge of danger, merely because he happened to take the more dangerous way by reason of the unexpected carelessness of a conductor, while acting as a motorman, in moving the car backward upon him.

ID.—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE—NEGLIGENCE OF DEFENDANT—SUPPORT OF FINDINGS.—The questions whether the plaintiff exercised due care in ascending when and where he did, and was free from contributory negligence, and whether the conductor was negligent in backing the car upon him, and whether defendant was guilty of negligence in permitting him to do so, were questions of fact for the jury; and it is held that the jury was justified in finding from the evidence that plaintiff exercised due care and judgment, and that his injuries were not caused by any fault or negligence on his part; but that the conductor was negligent in moving the car toward the steps, and that the defendant was negligent in permitting the conductor to take the place of the motorman in manipulating the Christiansen brake in moving the car out from the barn.

ID.—NEGLIGENT FAILURE OF DEFENDANT TO PROMULGATE RULE AS TO WARNING OF MOVEMENTS OF CARS IN CAR-BARN.—The failure of the defendant to promulgate a rule requiring all cars moving into and out of the car-barn to give warning of their movements was negligence on the part of the defendant, by which it was proximately responsible for the plaintiff's injuries.

ID.—NECESSITY OF RULE OF WARNING—CONSTANT MOVEMENT OF CARS—OBVIOUS DANGER.—The necessity of such a rule is clearly apparent from the undisputed facts that cars were constantly moving into and out of the car-barn, that a large number of persons were employed therein, and that there were only two ways by which persons having business in the pit can descend and ascend therefrom in close proximity to the tracks, and that there was obvious danger of accidents in the car-barn under the conditions shown to exist therein.

ID.—DUTY OF RAILROAD COMPANY TO EMPLOYEES—PROMULGATION AND ENFORCEMENT OF REASONABLE RULES.—It is the duty of railroad companies to exercise reasonable care in the matter of guarding and protecting their employees while employed in the discharge of their duties as such, and, to that end, to make and promulgate reasonable rules for the government of their employees in the performance of their duties as such.

ID.—DUTY AS TO RULES—QUESTION FOR JURY.—In almost all cases of negligence, the question whether it is the duty of the master to promulgate and enforce certain rules by which employees are to be guided in the discharge of their duties as such, for the purpose of preventing accidents, is one of fact for solution by the jury. It is held that that question was properly submitted to the jury in the present case, for its exclusive decision, which is binding upon the appellate court.

ID.—RULES WHEN A QUESTION OF LAW.—It is only when it appears beyond dispute that the situation was not one demanding rules, or one on which the evidence shows that no rule could have prevented the accident, that the courts may declare, as matter of law, that the master was under no obligation to have established rules.

ID.—TEST AS TO DECISION BY COURT OR JURY.—The true test upon the question as to when negligence becomes a question of law or of fact, is that if from the evidence but one conclusion can be reached it is one of law, but where the evidence is such that reasonable minds might differ upon the question as to whether there was or was not negligence, it is the duty of the court to allow the jury to solve it as one of fact.

ID.—PROPRIETY OF INSTRUCTION AS TO DUTY TO MAKE A RULE—OBVIOUS DANGER—CUSTOM OF OTHER COMPANIES.—The propriety of an instruction to the jury as to the duty of the defendant to promulgate a rule as to warning of the movements of cars in the car-barn, is

15 Cal. App.—9

not only shown to have been required to prevent obvious danger to accidents therein, but is also shown by evidence of the custom of other companies in promulgating such a rule to prevent accidents in street-car barns. '

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Harmon Bell, for Appellant.

Stanley Moore, and W. H. Orrick, for Respondent.

HART, J.—This is an action for damages for personal injuries in which plaintiff obtained a verdict against the defendant for the sum of $3,000.

From the judgment entered upon said verdict and the order denying the defendant a new trial the latter presents these appeals.

It appears that for nearly five years prior to the day of the accident in which plaintiff sustained the injuries constituting the subject of this action—the twenty-third day of September, 1906—he was employed by the defendant as a motorman on its street-car lines in the city of Oakland. About the hour of 5:40 o'clock A. M. on the day mentioned, plaintiff took his car out of the defendant's car-barn, situated at the corner of Telegraph avenue and Fiftieth street, in said city of Oakland. drove it to East Oakland and then returned with it to the car-barn. On this trip, he observed that the brakes on the car had been set so tightly that it was with considerable or unusual difficulty that he was able to manipulate them, and, therefore, upon reaching the barn on his return trip, ran his car into said barn for the purpose of having the brakes slackened or properly adjusted.

A general outline or plan of the car-barn is shown by a diagram which is incorporated into the record as an exhibit in the case. This diagram is here reproduced in order to a clearer understanding of the evidence of which the verdict is predicated.

It will be observed from the foregoing diagram that there are two tracks (designated by the figures 1 and 2) leading into the said barn through the Telegraph avenue or easterly entrance thereof to the "transfer table" and extending across the portion of the barn lying on the westerly side of said "transfer table." These tracks are laid on a solid flooring (marked on diagram "solid area") on the westerly side of the "transfer table" for a short distance and extend over a "pit," located at the extreme westerly end of the barn, where they terminate. Paralleling these two tracks and within a few feet therefrom and from each other and extending from the transfer table on the west over and across the "solid area" and the pit are several other tracks, two of which are, respectively, designated on the diagram by the figures 3 and 4.

The transfer table is used to transfer cars from tracks 1 and 2, as designated on the diagram, to the tracks paralleling tracks 1 and 2.

The use to which the pit is put is to enable workmen engaged in repairing and oiling the cars and adjusting the brakes to get underneath such cars for that purpose and thus to facilitate such work. The tracks extending over and across the pit are supported by a trestle, and between said tracks and extending across the pit are plank walks. The pit is of a uniform depth of four feet, four inches. Adjoining the southerly side of the south rail of the track marked 2 on the diagram and likewise adjoining the south rail of track 4 are situated stairways, each of which consists of four steps. These stairways constitute the only means of descension to and ascension from the pit.

According to the testimony of plaintiff, the facts with respect to the accident may be summarized as follows:

On returning to the car-barn for the purpose stated, plaintiff ran his car into the barn across the transfer table, thence over the pit, on the track on which entrance into the car-barn was made. The plaintiff explained to the car-repairer (Danielson by name), in charge of the car-barn at the time, that the brakes required readjustment. Danielson requested plaintiff to go down into the pit for the purpose of assisting in the correction of the difficulty. Plaintiff objected to doing as thus requested, saying that he did not care to go down into the pit because he would "get all grease." Danielson replied

that he was "short-handed that morning, and 'all I want you to do,' he said, 'is to hold these bars, hold the slack of the brake bars.' " Plaintiff, having reached the car-barn on schedule time and anxious to avoid delay in getting his car out, thereupon entered the pit and assisted Danielson as the latter had requested. He remained in the pit thus employed for about five or six minutes. The work of adjusting the brakes having been completed, plaintiff then started to leave the pit by the stairway at track designated as "4" on the diagram. At this time plaintiff noticed that the transfer table, which was customarily moved in front of the track over which it was intended to run a car out of the barn, was in front of track 2, on which a car stood, though not over the pit. Tracks 1 and 2, as we have seen, extend from the street into the barn, hence those tracks were used more frequently than were the other tracks in the barn. In this connection plaintiff explained the reason which led him to undertake to leave the pit by the stairway situated near track 4, instead of ascending by the stairway near track 2, which was nearest to the point at which he stood when assisting in adjusting the brakes, as follows: "I did not go up the stairway that was there closest to track 1 or track 2 because that track No. 1 and track No. 2 are both tracks that go out of the car-house and they were turning the transfer table back and forth and switching cars on those two tracks, and sometimes they would back one car up to get another car out ahead of it. I didn't want to get out there because they might back a car out on that place." He therefore left the point at which he had been working and started toward the stairway near track 4, stooping down as he walked under the tracks and the plank walks lying between tracks 1 and 4.

At the time he started to ascend the stairway, situated near track 4, there was standing on said track, at a distance of approximately six feet from said stairway a large, closed, vestibule car, equipped with an air-brake, known as the Christiansen brake. As the plaintiff was walking along the bottom of the pit in the direction of the stairs at track 4, he saw the car standing on said track, and that it was motionless, and, so far as he could observe, there was no one in the car. As he started to ascend the stairway, he again looked at the car and satisfied himself that it stood on the track "dead," by which

we understand the plaintiff to have intended to say that to all appearances the car was unconnected with the electrical current for propelling it and unoccupied by the motorman and conductor or by any other person. In this connection plaintiff testified that from the bottom of the pit it was impossible to see a person in front of the car. "One would have to get out of the pit before he could see a man on the car," he said. He further testified that it would be impossible to see the motorman on the car from the lower step of the stairway he was ascending, but that from the top step he might see "the top" of the motorman—"he might see his hip."

As to the degree of light in the pit at the time plaintiff was therein, there is a variance between the testimony of plaintiff and that of witnesses for defendant. Plaintiff testified that, while it was "daylight out of doors," it was shady and dark in the pit. He could not recall whether there were electric lights burning in the pit at the time; but there were cars standing on the tracks in the barn and they "shut off the lights."

He had, however, mounted two or three steps of the stairway on his way out of the pit, when the said car on track 4 was suddenly started in motion and before plaintiff could get out of the way the car ran into him from behind and his body was caught between the fender and the top of the steps. He was dragged along by the car for a distance of five or six feet, when the car was stopped for an instant and then started forward again, dragging him a distance of from twelve to fifteen feet before the car was brought to a standstill. The result of being thus caught and dragged about was the fracturing of plaintiff's collar-bone and two ribs and contusions on the body. Dr. Stratton, who attended and examined plaintiff immediately after the accident, stated that plaintiff was also suffering from suffocation, or a condition technically characterized as "traumatic asphyxia," due to a crushing of or jamming in of the chest wall so that respiration is prevented for quite an interval of time, to produce which condition, "there must be very extreme pressure." Just previously to the trial of this cause—nearly two years after the injuries so described were received by plaintiff—Dr. Stratton examined plaintiff and still found "evidence of the fracture of the collar-bone and also evidence of the fracture of the ribs on the right side where I

noted the contusion at the time at the Receiving Hospital.''
The doctor further declared that plaintiff is ''now suffering
from neurasthenia or nerve exhaustion, a weakened state of
the nervous system.''

The plaintiff also testified that he had continuously up. to
the time of the trial felt the effects of his injuries; that he was
unable to do the work that he was capable of doing prior to
the accident.

The foregoing statement as to the circumstances under
which the accident occurred is, as before stated, principally
educed from the testimony of the plaintiff. We will have
occasion to refer to other testimony in the course of the dis-
cussion to follow.

The complaint, among other things, charges that the em-
ployee of defendant in control of the car which ran into and
injured plaintiff ''was incompetent and inexperienced in the
operation thereof, and said incompetency and inexperience
were well known to defendant at all times herein mentioned,
and could to it have been well known by the exercise of ordi-
nary care''; that ''said employee then and there failed and
neglected to sound a bell or gong or warn plaintiff when said
car was put in motion,'' etc.; that ''defendant negligently and
carelessly failed and neglected to adopt or promulgate or en-
force any rule requiring its employees, or other persons,
taking cars out of its said car-house, or operating its said cars
over said pit, to sound a gong or bell or give proper notice
and warning to persons in said pit and in the vicinity thereof.
Such rule was at all times a necessary and proper rule.''

The answer, after denying all the material allegations of the
complaint, sets up the defenses that plaintiff's own negligence
contributed proximately to the cause of his injuries and that
said injuries were received solely by reason of the negligence
of a fellow-servant.

At the close of plaintiff's case, the defendant presented a
motion for a nonsuit on numerous grounds which are, how-
ever, reducible to two propositions, viz.: 1. That the evidence
failed to disclose negligence on the part of the defendant;
2. That the accident and consequently the injuries complained
of were proximately caused by plaintiff's own inexcusable
negligence.

This motion was denied by the court, and it is now claimed:

1. That the court erred in denying said motion;

2. That the court erred by refusing to direct the jury to return a verdict for defendant on the grounds upon which the motion for a nonsuit was urged;

3. That the court erred by submitting to the jury certain instructions upon the ground that there was not received into the record any evidence to which they were pertinent.

The questions submitted by the first and second of the grounds as they are thus stated merely present the propositions whether defendant was guilty of negligence and whether the plaintiff was guilty of negligence which contributed proximately to the cause of his injuries.

Whether the court erred in refusing to grant the motion for a nonsuit must, obviously, depend upon the proposition whether plaintiff's testimony failed to disclose negligence on the part of the defendant, but, on the other hand, showed that the injuries sustained by plaintiff were occasioned proximately by his own carelessness and negligence.

Appellant contends that such is the effect of the evidence produced by plaintiff, and if this be true, of course, it was the duty of the court to grant the motion for a nonsuit, for in such state of the testimony the question as to the effect of the evidence would be one of law for the court and not for the jury to determine.

The rule as we have thus attempted to state it is thus clearly and concisely expounded in the case of *Kenna* v. *Central Pac. R. R. Co.*, 101 Cal. 31, [35 Pac. 332]: "When the facts are undisputed, and the plaintiff's negligence clearly appears therefrom, or when the uncontradicted evidence on the part of the plaintiff is such that the only reasonable construction that can be drawn therefrom is that the injured person did not exercise such care as men of ordinary prudence usually exercise in positions of like exposure and danger, the issue of negligence is a question of law to be determined by the court. There is no issue of fact to be submitted to the jury, but it is the duty of the court to grant a nonsuit," citing a number of California cases.

No one will dispute the rule, founded in common sense, that a person cannot recover for injuries sustained through an accident if he could have avoided such accident by the exercise of reasonable care on his part (1 Thompson on Negligence,

sec. 1249, and *Shade* v. *Bay Counties Power Co.,* 152 Cal. 10, [92 Pac. 62]), and that if his own evidence discloses that he could have avoided the accident by the exercise of reasonable care, or that the employment in which he was engaged at the time he was injured was beyond the scope of his duties as an employee of defendant, and that he voluntarily, and upon his own responsibility, without request or suggestion to do so by his employer or one in authority over the work, assumed the performance of the task, the question of negligence becomes one of law for the decision of the court, and a motion for a nonsuit under such circumstances should be allowed. (See *Vinson* v. *Los Angeles R. R. Co.,* 147 Cal. 479, [82 Pac. 53]; *Thompson* v. *California Constr. Co.,* 148 Cal. 35, [82 Pac. 367]; *Douglas* v. *Southern Pacific Co.,* 151 Cal. 242, [90 Pac. 538]; *Shade* v. *Bay Counties Power Co.,* 152 Cal. 10, [92 Pac. 62]; *Brett* v. *Frank & Co.,* 153 Cal. 274, [94 Pac. 1051].)

On the other hand, if the evidence produced by plaintiff is conflicting; if there is some evidence introduced on his behalf disclosing negligence in defendant and showing that plaintiff was not guilty of that degree of contributory negligence to which the cause of his injuries may directly or proximately be imputed, then the question presented is one of fact and for solution by the jury, and in that state of the record, manifestly, the conclusion of the jury is binding upon reviewing tribunals.

Upon the question of plaintiff's alleged negligence, the first contention of appellant is that plaintiff was engaged in discharging no part of his duty as a motorman and therefore acted beyond the scope of his employment when in the pit assisting the car-repairer to adjust the brakes upon his (plaintiff's) car.

It is secondly contended that there was ample light in the pit by which plaintiff, by the exercise of ordinary care, could easily have determined, before starting to leave the pit, whether there were cars standing on any of the tracks extending over the pit, and whether there was a likelihood that they would or might be started at any moment.

Thirdly, it is claimed that plaintiff, in attempting to leave the pit, was grossly negligent in choosing the stairway situated near track 4, on which the car that struck him was standing,

in the place of going up through the stairway situated near track 1, near which he was engaged in assisting the car-repairer and which was the more convenient and the less dangerous means of exit.

Of course, these were all matters for the jury to determine, but as to the first of the propositions suggested by appellant— that plaintiff was engaged in the performance of no part of his duty as a motorman when aiding the car-repairer to adjust the brakes—we may say that we are not prepared to declare that it was not his duty, under the circumstances, to thus assist the car-repairer. It was certainly his duty to get his car out on schedule time, and to do whatever was reasonably necessary to accomplish that fact. But we think that it is immaterial, under the circumstances of this case, whether or not, in assisting Danielson at the latter's request, plaintiff was engaged in employment strictly within the sphere of his duty as a motorman. Assuming it not to have been his duty to have thus assisted the car-repairer and that his act in so doing was purely voluntary, the important facts remain: 1. That there was no promulgated rule or custom of the company enjoining motormen or conductors from entering the pit when requested to do so or they deemed it necessary to do so to assist in correcting any difficulty about their cars; 2. That plaintiff entered the pit for the purpose of assisting the car-repairer in adjusting the brakes on his car, at the request of the car-repairer, who said that it was necessary to secure plaintiff's assistance because "we are short-handed" that morning; 3. That plaintiff did not become nor was he a trespasser by reason of going into the pit; 4. That the accident did not occur while plaintiff was engaged in so assisting Danielson; 5. That motormen frequently went into the pit to assist the car-repairer in fixing or repairing their cars.

Having gone into the pit for the purpose stated, whether strictly in the line of his duty or not, it was, of course, his right to return and the duty of defendant to exercise reasonable care in protecting him while so doing against injury as the result of the negligent acts of his coemployees.

The sole questions here, then, apart from some points urged as to certain instructions, are whether the plaintiff exercised due care in attempting to emerge from the pit, and, if so, then

whether defendant's negligence was directly the cause of the injuries inflicted upon plaintiff.

We must be able to declare that the evidence as it is presented here discloses that plaintiff's conduct in undertaking to return from the pit by way of the steps situated near track 4, instead of attempting to ascend by way of the steps near track 1, itself constituted an act of culpable negligence, or that the evidence shows that he did not exercise the degree of care and circumspection with which he was charged in ascertaining, before he started to leave the pit by way of the stairs at track 4, whether the car on said track was a "dead car" and that it would probably not be put in motion at that time, before we are authorized to declare, as a matter of law, that plaintiff was not entitled to recover.

But we are not, as to either of the propositions suggested, justified by the record in announcing any such conclusion. It cannot be said, under the evidence here, that plaintiff was, as a matter of law, guilty of negligence which proximately contributed to the cause of the injuries he received merely for the reason that he chose one stairway in preference to the other as a means for effecting his exit from the pit.  There is nothing in the evidence from which it appears that either stairway was dangerous *per se*.  One was, according to the evidence, abstractly viewing them, as safe as the other as a means of exit.  As seen, his reason for taking the stairway near track 4 was because track No. 1 and track No. 2 are both tracks that go out of the car-house, "and they were turning the transfer table back and forth and switching cars on those tracks, and sometimes they would back one car up to get another car out ahead of it.  I didn't want to get out there because they might back a car out on that place."  Thus it will be seen that plaintiff, basing his judgment upon all the conditions existing as he viewed them, reached the conclusion that for the reason stated by him it might be safer to undertake his exit by way of the steps located near track 4 than to do so by way of the steps near track 1.  There is nothing in the evidence, as it appears here, showing that plaintiff made up his mind hastily or without due regard to the situation generally as it presented itself to him.  To the contrary, we should say that, accepting as correct, as the jury presumptively did, his description of the conditions and circumstances

surrounding him at the time, he displayed very good judgment in taking the stairway near track 4 in preference to the other stairway.

The cases cited by counsel to this branch of the discussion are not pertinent to the facts here. The rule announced in those cases and which counsel invokes here is tersely stated as follows: "If two ways are open to a person to use, one safe and the other dangerous, the choice of the dangerous way *with knowledge of the danger* constitutes contributory negligence." (28 Cyc., p. 52; *Douglas* v. *Southern Pacific Co.*, 151 Cal. 251, [90 Pac. 538]; Bailey on Personal Injuries, secs. 1123, 1124; *Hoffman* v. *American Foundry Co.*, 18 Wash. 287, [51 Pac. 385].) But, as indicated in the quotation, the person injured must have had knowledge of the danger, or that there was another and safer way which he might have taken of which he had knowledge, otherwise contributory negligence cannot be laid at his door for the sole reason that it happened that he took the dangerous way. (29 Cyc., p. 520; *Well* v. *Moran Bros.*, 55 Wash. 102, [104 Pac. 172]; *Missouri etc. Ry. Co.* v. *Hanley* (Tex. Civ. App.), 123 S. W. 726; *Lewis* v. *Texas etc. Ry. Co.* (Tex. Civ. App.), 122 S. W. 605; *Lyon* v. *Charleston etc. Ry. Co.*, 84 S. C. 364, [66 S. E. 285]; *Dossett* v. *St. Paul etc. Lumber Co.*, 40 Wash. 276, [82 Pac. 273].) In the last-named case the following language fits the facts of the case at bar as to the point we are considering: ". . . It is sufficient to say upon this point that there was no *apparent danger* in reaching or stepping across the plane of the action of the nigger. While the nigger rested in its slot and was not in use, there was no more danger in reaching across than there was in walking around. The place was *apparently safe. It was, in fact, safe when respondent chose that way. There was no real danger, unless the sawyer should put the nigger in operation. When he did so, the place became dangerous, but not until then. . . .*" (Italics ours.) And the same is true here. Intrinsically and apparently, as a means of entering into and of exit from the pit, one stairway was as safe as, or no more dangerous than, the other. They were both installed and used equally for that purpose. If there could arise any difference between the two in point of safety or danger, it was not in the stairways themselves or because of their situation, but solely because of extraneous circumstances or conditions

existing in the car-house at the particular time when their use became necessary.  It involved, therefore, purely a matter of judgment with plaintiff, formed and acted upon in view of all the surrounding conditions, as to which of the two ways of exit was the safest, and the jury were authorized to find that this represented the exercise of an honest judgment, for it certainly cannot be assumed that plaintiff would have selected the way for making his exit which his judgment would have told him was the more dangerous of the two ways to be used for that purpose.  As is said in the Washington case from which we have just quoted, so it is true here, so far as we are able to determine from the record before us, that the stairway taken by plaintiff "was, in fact, safe when respondent chose that way," and became dangerous only by the act of someone on the car which stood on track 4, apparently "dead."

It is manifest, from the state of the record, as thus explained, bearing upon the charge that plaintiff was guilty of contributory negligence, the question whether plaintiff acted with due care or negligently, before starting to leave the pit and attempting to ascend the steps, was one entirely for the jury to determine.  According to his testimony, before starting up the stairway, plaintiff looked in the direction of the car to determine whether, from appearances, it might probably be moved at that time.  When he made up his mind to return from the pit, and when in the act of starting up the stairway, the transfer table was not in front of the car on track 4.  "I did not see anybody on that car," said plaintiff; ". . . the transfer table was over near in front of my car"— it "was running there all the time to the track that went out of the car-house."  His cross-examination might appear to have weakened his testimony on this point; still, as suggested, it was for the jury to finally say, from a fair consideration of his testimony as a whole, whether, as to this matter, he exercised, under all the circumstances appearing, the care with which he was charged.  It will be remembered that while the day was bright outside the car-house, the pit was, as plaintiff put it, somewhat "shady"—that is, it was not as light in the pit as it was upstairs or on the outside of the barn.  This, as plaintiff stated, was partly due to the fact that there were cars standing on the several tracks, thus shutting out, to a

great extent, the natural light from the outside. There is, it is true, some conflict in the evidence on the condition of the pit as to light at the time, yet, as is true of all questions of fact where there exists a conflict in the evidence addressed thereto, the question as to the condition of the pit with respect to lightness or darkness, was one solely within the right of the jury to settle.

We have now considered the charge that plaintiff's injuries would not have been received but for his own negligence, and we are satisfied, as is evident from what we have thus far had to say, that the jury were justified by the evidence in finding these facts: 1. That plaintiff was requested by the car-repairer to enter the pit and assist in adjusting the brakes of his car; 2. That plaintiff entered the pit for that purpose at the car-repairer's request; 3. That plaintiff, in attempting his exit from the pit, exercised due caution, care and judgment, under all the conditions and circumstances by which he was surrounded, and that, therefore, the injuries inflicted upon him were not proximately caused by any fault or negligence upon his part.

The consequence of the foregoing views is that, if plaintiff's injuries were the result of negligence at all, it must have been the negligence of either the man at the motor of the car that struck him or the negligence of the defendant.

Counsel for respondent assert that the man who moved the car at the time of the accident was incompetent to handle the motor—that by reason of inexperience, he was incapable of properly handling a car with what are known as the Christiansen brakes. We find no direct evidence which fully justifies this statement. This man was the conductor of the car and in the absence of the motorman therefrom at the time, he (said conductor) started the car preparatory to taking it out of the barn. He testified, as did the foreman, that he frequently moved the car from the barn, and he further testified that he had, on numerous occasions, as a mere matter of practice, stopped and started cars manipulated by means of the Christiansen brakes. While his experience in handling such brakes was undoubtedly very limited, there was, aside from that fact, no *direct* testimony disclosing want of ability in him to properly and without danger of accidents stop and start cars equipped with brakes of that character. But, from the man-

ner in which he handled the car after hearing the cry by
plaintiff when the latter was pinned between the fender and
the steps, the jury could have well *inferred* that he was with-
out sufficient experience to manage a car by means of the
Christiansen brakes.    There is, however, very little ground by
which a serious doubt may be supported that the conductor
heedlessly and without due or proper care or attention moved
the car toward the steps by which plaintiff was making his
way from the pit.    If the car-barn was as light as appellant
contends that the evidence shows it to have been when the acci-
dent occurred, the conductor, it seems to us, ought to have
been able to see plaintiff, as he was ascending, without the
slightest difficulty.    But the conductor declared that he did
not see plaintiff and knew nothing of his presence near the
track over which he was moving the car until he heard his cry.
The jury were, from these circumstances, justified in conclud-
ing that the conductor was not only negligent or did not use
reasonable care in moving the car, but that the defendant was
negligent in the first instance in permitting him, under the
circumstances, to take the place of the motorman, experienced
in manipulating the Christiansen brakes, in moving the car
out of the barn.

But the vital question as to the charge of negligence against
the defendant is whether or not the corporation was primarily
negligent by its failure to establish, publish and enforce a rule
requiring warning to be given before the starting of cars in
and from the car-house, and was by such negligence proxi-
mately responsible for plaintiff's injuries.

The undisputed evidence discloses that the car-barn was a
place where there was constantly employed a considerable
number of men in various capacities.    Cars were, of course,
constantly run into the car-barn and were transferred from
one track to another, as the exigencies of each case required.
Indeed, it is very clear from the testimony that the transfer
table was in use pretty much all the time.    There was hardly
a day that there were not some of the employees in the pit
engaged in some sort of employment in connection with the
repairing of the cars.    We have seen that there were but two
ways by which men having business in the pit could get in and
out thereof.    These ways were, as has been shown, situated
in such close proximity to the car-tracks that, manifestly, no

one could either descend into or ascend from the pit with safety when the cars were moving on the tracks near which they were situated.  In short, danger of accidents in the car-barn, under conditions as they were shown to exist, was obvious.  In other words, unless there was at least ordinary care exercised in the manipulation of the cars in the barn, there was great probability of someone receiving serious injury or losing his life by being run into by the cars when transferring and moving them about in the barn, and such danger was one which could reasonably be anticipated under the circumstances.

The evidence shows—indeed, it is admitted by counsel for appellant—that the defendant, up to the time of the accident in which plaintiff was injured, had not only not practiced but had never promulgated any rule with reference to giving any warning preliminarily to starting its cars when in the car-barn and about to be moved from track to track, as it was requisite to do in order to get them out of the barn.  And it is in evidence and undisputed that, as a matter of fact, before moving the car which struck and injured plaintiff, no warning of any character whatsoever was given just prior to starting it.  It is the duty of railroad companies to exercise reasonable care in the matter of safeguarding and protecting their employees, while engaged in the discharge of their duties as such, against the negligence of coemployees or their own negligence through the operation of cars or other machinery and, to that end, make, promulgate and enforce reasonable rules for the government of their employees in the performance of their duties as such.  (*Abel* v. *Delaware etc. Co.,* 128 N. Y. 662, [28 N. E. 663] ; *Slater* v. *Jewett,* 85 N. Y. 73, [39 Am. Rep. 627] ; *Hartvig* v. *N. P. L. Co.,* 19 Or. 522, [25 Pac. 358] ; *Merrill* v. *Oregon Short Line R. Co.,* 29 Utah, 264, [110 Am. St. Rep. 695, 81 Pac. 85, 87] ; *Polaski* v. *Pittsburg Coal Dock Co.,* 134 Wis. 259, [114 N. W. 437, 14 L. R. A., N. S., 952] ; *Doing* v. *New York etc. Ry. Co.,* 151 N. Y. 579, [45 N. E. 1028] ; *Dowd* v. *New York etc. Ry. Co.,* 170 N. Y. 459, [63 N. E. 541] ; *Bernardino* v. *New York etc. Co.,* 136 App. Div. 577, [121 N. Y. Supp. 49].)

The question here, then, is : Was the failure of defendant to promulgate and enforce a rule requiring warning of the starting of cars in the car-house to be given in some proper man-

ner or by some appropriate means preliminarily to so starting them, negligence? And, if so, was such negligence the proximate cause of plaintiff's injuries?

It is, of course, a matter of common knowledge that a place in which there is a large number of railroad cars incessantly moving, turning, switching and sidetracking is, at best, a dangerous place in which to work, and it requires in such places the exercise of very great care at all times to prevent serious accidents. Of course, employees in such places have a duty resting upon themselves to exercise great care to avoid accidents while discharging their duties. On the other hand, as before declared, a duty equally as imperative rests upon the master to adopt and enforce all means reasonably necessary for the protection of his employees against the consequences of the negligence of coemployees while discharging their duties as such.

In case of railroad corporations or other establishments whose business operations require the employment of extensive and complicated machinery, it is proper and requisite that rules should be prescribed, promulgated and enforced for the government of the employees, to the end that accidents may be avoided. And, in almost all cases of negligence, the question whether it is the duty of the master to promulgate and enforce certain rules by which employees are to be guided in the discharge of their duties as such for the purpose of preventing accidents is one of fact for solution by the jury.

The plaintiff in the case at bar, therefore, very properly submitted, for determination by the jury, as an issue of fact, the question whether, under the circumstances disclosed, the defendant was guilty of negligence by its failure to establish, promulgate and enforce a rule requiring warning to be given of the starting of cars prior to starting them in the car-barn, and whether, if negligence was thus shown, the injuries of plaintiff were proximately caused thereby. Necessarily, this question was one of fact and, therefore, one for exclusive decision by the jury. In other words, it was for the jury to say, from the evidence exposing the situation or conditions existing in the car-house at the time and at all times, whether such a rule was reasonable, practicable and necessary for the proper protection of the employees whose duties were either

15 Cal. App.—10

wholly or in part to be performed in said house, from injury or perhaps death. It is said in one of the cases already cited: "When dangerous work is to be done, the care should be proportionate to the danger, and reasonable precautions taken to protect human life. The principle that servants assume the risks of the business is qualified by the duty of the master to protect them from unnecessary hazards, including the negligence of fellow-servants, by making such reasonable rules as the situation requires (citing *Abel* v. *Canal Co.*, 128 N. Y. 662, [28 N. E. 663]). The *evidence authorized the jury to find that the defendant had not discharged its entire duty in this regard,* and that some further regulation was required to protect the car-repairer from the danger arising from the practice of kicking cars, which for years had prevailed in the yard. A rule prohibiting the running of a train, without an engine attached to control it, upon a track occupied by standing cars when repairers are at work on them, or forbidding the kicking of cars on a track thus occupied, would doubtless have prevented the accident which resulted in the death of the plaintiff's intestate. *If we cannot say, as a matter of law, that some such rule was reasonable and practicable, the jury could so find, as a matter of fact."* (*Dowd* v. *New York etc. Ry. Co.,* 170 N. Y. 459, [63 N. E. 541].)

"The duty of the master," say the New York court of appeals, in *Berrigan* v. *New York etc. R. Co.,* 131 N. Y. 582, [30 N. E. 57], "and the degree of care which he is called upon to exercise is measured by the ordinary law of negligence, having regard to the danger to be apprehended, and whether or not the case is one calling for the establishment and enforcement of rules is *usually a question for the jury."* (See *Devoe* v. *New York etc. R. Co.,* 174 N. Y. 1, [66 N. E. 568].)

It is only where it appears beyond dispute that the situation was not one demanding rules, or one in which the evidence shows that no rule could have prevented the accident, that the courts may declare, as a matter of law, that the master was under no obligation to have established rules. (*Berrigan* v. *New York etc. R. Co.,* [131 N. Y. 582, 30 N. E. 57]; *Sparks* v. *Wisconsin Cent. Ry. Co.,* 139 Wis. 108, [120 N. W. 858]; *Redman* v. *Norfolk etc. Ry. Co.,* 150 N. C. 400, [64 S. E. 195]; *Steber* v. *Chicago etc. Ry. Co.,* 139 Wis. 10, [120 N. W. 502]; *Hill* v. *Boston Ry. Co.,* 72 N. H. 518, [57 Atl. 924]; *St. Louis*

*etc. Co.* v. *Nelson,* 20 Tex. Civ. App. 536, [49 S. W. 710];
*McCoy* v. *New York Cent. Ry. Co.,* 185 N. Y. 276, [77 N. E.
1174].)

But, as before declared, this is very clearly not a case
wherein it can be said, as a matter of law, that such a rule as
is under consideration here should not have been enforced, or
that the accident could not have been prevented had such a
rule been put in operation and practice.    As stated, the ques-
tion here was one of fact for the jury, and their verdict, which
necessarily embraces a finding that the negligence by which
plaintiff sustained his injuries was imputable to the defendant
and consisted largely in its omission to promulgate and en-
force a rule requiring that warning be given before starting
or moving cars in the car-house, is binding upon this court.

Counsel for appellant cites a number of cases in which it
has been held that the blowing of whistles or ringing of bells
in switch-yards would tend to create confusion in the mind of
a person rather than serve as warnings of danger.    But an
examination of those cases shows that the conclusion thus an-
nounced was based upon the particular facts of the particular
case.    For example, in *Ryan* v. *Northern Pac. Co.,* 53 Wash.
279, [101 Pac. 880], it is said: "The fact that whistles were
not sounded and bells were not rung did not tend to show
negligence, because *under the conditions there,* where numer-
ous cars were running backward and forward, such sound
would only create confusion, and would afford no protec-
tion."    Thus it will be observed that the court bases its con-
clusion upon the *finding* of the trial court involved in its order
directing a verdict for defendant.    We do not understand
that the appeal court in that case pretended to lay down the
rule as an abstract proposition of law, but only that *conditions
as shown in that case by the evidence* made the question one of
law and not of fact—that is, assuming the facts as to the con-
ditions existing at the time of the accident to be true, the
defendant could not, as a matter of law, be guilty of negli-
gence.

As seen, the true test, according to all the authorities, upon
the question of when negligence becomes a question of law or
is one of fact is this: If from the evidence but one conclusion
can reasonably be reached, it is a question of law; but where
the evidence is such that reasonable minds might differ upon

the question whether or not there was negligence, "then the question returns to the domain of fact, and the duty of the court is to allow the jury to solve it as a fact." (*McKune* v. *Santa Clara V. M. & L. Co.*, 110 Cal. 484, [42 Pac. 980]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 229, [53 Pac. 651]; *Fernandez* v. *Sacramento etc. R. R. Co.*, 52 Cal. 45; *McKeever* v. *Market St. R. R. Co.*, 59 Cal. 294; *Chidester* v. *Consolidated etc. Co.*, 59 Cal. 197; *House* v. *Meyer*, 100 Cal. 592, [35 Pac. 308].)

3. The court's instructions as to the duty of the defendant to promulgate and enforce rules governing the operation of its cars in the barn for the protection of the employees are declared by appellant to be prejudicially erroneous.

The ground of the objection to these instructions is that there was introduced no evidence of which they could be pertinently and properly predicated. In support of its position on this proposition, appellant refers to and quotes from Labatt on Master and Servant, volume 1, pages 466, 467 and 468. That author, among other things, says: "But in the absence of evidence showing that rules would be useful or feasible under the circumstances, the master cannot be found negligent in not having promulgated them. It is, therefore, error to leave the case to the jury where the plaintiff has offered no evidence which indicates that other employers in the same business had promulgated any such rule, or that the suggested rule was necessary or practicable, or that the necessity and propriety of making such a rule was so obvious as to make the question one of common knowledge and experience. . . . If the plaintiff relies upon the theory that some specific rule should have been promulgated under the circumstances, he must show not only that the rule suggested was necessary, but that it was reasonable and proper, and, if observed, would have adequately protected the employees."

We have already expressed our views as to the sufficiency of the evidence to show the *necessity* of a rule requiring proper warning of some kind being given before starting the cars. Not only does the evidence disclose conditions which would seem to imperatively call for such a rule, but there is evidence in the record disclosing it to be a custom among several other street railway corporations—some in the east and others in California—to give warning preliminarily to

moving cars in car-houses. This testimony as to such custom was, we think, sufficient to "indicate that other employers in the same business had promulgated" such a rule.

The instructions of which complaint is thus made, which are numbered 7, 8, 9, 17, 18 and 21, have been carefully examined with reference to their applicability to the issues tendered by the pleadings and developed by the proofs with the result that it is our conclusion that they, as well as the entire charge of the court, contain a clear and correct statement of the law of the case.

Some other alleged errors are assigned, but in these we perceive nothing that calls for special notice.

The motion for a nonsuit was properly denied and the verdict appears to be amply supported by the evidence.

The judgment and order are, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.