[Sac. No. 1199.   In Bank.—May 13, 1907.]

MABEL H. R. DOUGLAS et al., Respondents, *v.* SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

NEW TRIAL—SETTLEMENT OF STATEMENT—CONSTRUCTION OF STATUTE AFFECTING.—Provisions of the statute for the settlement of statements on motions for new trial must be liberally construed, with a view to promoting the rights of the parties and in the interests of justice. Such statements are ultimately used as a basis for presenting the merits of a case upon an appeal, the right to which is constitutionally conferred, and no narrow construction should be placed upon a rule of procedure which will defeat that right.

ID.—NOTICE OF SETTLEMENT—EXTENSION OF TIME—PRESENTATION FOR SETTLEMENT.—Under section 1054 of the Code of Civil Procedure the court has power to extend the time provided by subdivision 3 of section 659 of that code within which to give notice of the time for presenting a proposed statement on motion for new trial and amendments thereto to the judge for settlement, and to extend the time for the settlement of the same for a corresponding period, the only requisite being that when such notice is given, the adverse party must have five days' notice of the presentation. The power to extend the time for giving such notice is not affected by the fact that at the time the order of extension was made it was impossible, by reason of the lapse of time, for the moving party to have given five days' notice to his adversary of such presentation within the ten days from the service of the amendments.

ID.—NON-ACCEPTANCE OF AMENDMENTS—NOTICE OF PRESENTATION IN DUE TIME.—Where a party intending to move for a new trial in due time served its proposed statement on the motion, and the adverse party served amendments thereto, a notice by the moving party of the non-acceptance of the amendments which stated that "in due time" it would present them to the judge for settlement, is not to be construed to the effect that the proposed statement and amendments would be presented on actual notice. Properly construed, the notice meant that the moving party intended to pursue the general course required by section 659 of the Code of Civil Procedure, as the result of such non-acceptance, and permitted either a presentation to the judge on actual notice to the adverse party or a delivery to the clerk of the court for the judge.

NEGLIGENCE—MASTER AND SERVANT—SAFE WAY TO WATERCLOSET—CONTRIBUTORY NEGLIGENCE.—Where an employer operating an extensive machine-shop and an adjoining planing-mill, which latter during working hours was an unsafe place by reason of its being filled with machinery in operation and materials in transit, and through which there was no regular pathway, has provided a safe and secure way to a watercloset at the rear of the planing-mill, for the use of his employees in the machine-shop, which did not lead through the planing-mill, it was the duty of an employee in the machine-shop having knowledge of such safe way to use it in going to or from the watercloset; and if he fails to make such use and is injured while passing through the planing-mill on his return from the closet, he is guilty of contributory negligence, and this is so although the route through the planing-mill was the more convenient.

ID.—KNOWLEDGE OF SAFE WAY—PRESUMPTION.—In the absence of direct evidence of such employee's knowledge of the safe way it will be presumed that he did know of it from the facts that he had been an employee in the machine-shop for upwards of twenty years, and that his co-employees, of whom there were about one hundred, never took the route through the planing-mill. But independent of such

presumption it was his duty to have ascertained whether a safe way had been provided by the employer for the benefit of himself and his co-employees.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order refusing a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

Grove L. Johnson, for Appellant.

A. L. Shinn, and M. S. Wahrhaftig, for Respondents.

THE COURT.—After judgment in Department Two, a rehearing was ordered, and the cause argued before the court in Bank. Upon further consideration, we are satisfied with the conclusions heretofore reached, and, for the reasons stated in the opinion filed in Department, the judgment and order appealed from are reversed, and the cause remanded for a new trial.

The following is the Department opinion referred to:—

"The plaintiffs are the widow and children of Robert C. Douglas, and brought this action to recover damages for his death, alleging that it was occasioned through the negligence of defendant.

"The trial resulted in a verdict and judgment in favor of plaintiffs, and this appeal is taken by defendant from said judgment and the order denying its motion for a new trial.

"It is insisted preliminarily that on the appeal from the order denying the motion for a new trial the statement settled on motion therefor cannot be considered by this court, because it was not presented to the lower court for settlement within the time allowed by law. This objection was urged by plaintiffs at the time of settlement in the lower court, and the facts upon which it was based are presented in the record.

"These facts are that defendant in due time served its proposed statement on motion for a new trial, and on February 16, 1903, plaintiffs served their proposed amendments thereto, of the non-acceptance of which defendant gave notice

to plaintiffs next day, the notice also stating that 'in due time' defendant would present them to the judge for settlement. On February 24, 1903, defendant obtained an order granting it fifteen days in addition to the time allowed by law, within which to give notice of the time for presenting said proposed statement and amendments to the judge for settlement, and extending the time for settlement of the same for that period. The same day this extension was obtained defendant notified plaintiffs that said statement and amendments would be presented to the judge for settlement at 10 A. M. March 6, 1903. They were presented at that date and time and the settlement was continued by the court from said last date until April 10, 1903, on which day the statement was settled.

"It is provided by subdivision 3 of section 659 of the Code of Civil Procedure, that when proposed amendments are served, if they are adopted the statement shall be amended accordingly, and presented for settlement, but 'If not adopted, the proposed statement and amendments shall, within ten days thereafter, be presented by the moving party to the judge, upon five days' notice to the adverse party, or delivered to the clerk of the court for the judge.'

"No question is raised but that the court could have extended, under section 1054 of the same code and upon application duly made, the time within which the proposed statement and amendments should be presented for settlement, as likewise the time for giving notice of such presentation. Respondent, conceding this to be true, insists, however, that, as prior to February 24, it became impossible for the defendant to give five days' notice to plaintiffs within the ten days from the service of the amendments—February 16— its right to do so had lapsed, and the court had no power thereafter to extend the time for giving such notice.

"We think the construction contended for is too narrow and extreme to be given to the provision of the section immediately in question, and is unwarranted upon a fair consideration of its purpose. The purpose of the provision is twofold: to fix a time when the statement shall be presented, and to provide different methods whereby the adverse party may have notice of the fact. The statement must, unless the time is extended, be presented within ten days, but the

method of its presentation is optional with the moving party; he may present it on five days' notice to his adversary, or he may deliver it to the clerk for the judge. (*Mellor* v. *Crouch*, 76 Cal. 594, [18 Pac. 685].) In the one case the adverse party is actually advised by the notice when it will be presented, which may be at a time earlier than the ten days, and at which time the court may fix the date of settlement; in the other, he has constructive notice of its presentation by expiration of the time within which the law requires it to be presented, and will receive notice of the date of settlement from the clerk. (Code Civ. Proc., sec. 659.) In either event, however, the main purpose of the provision of the statute is fulfilled—he has notice of its presentation.

· ''Provisions of the statute must be construed liberally, with a view to promoting the rights of parties and in the interests of justice. Statements on motion for new trial are ultimately used as a basis for presenting the merits of a case upon an appeal, the right to which is constitutionally conferred, and no narrow construction should be placed upon a rule of procedure which will defeat that right. As we say, one purpose of the statute is to place a limitation on the time for presentation; the other is to provide an optional mode of presentation. In our judgment, under section 1054 of the Code of Civil Procedure, the time may be extended for all purposes, including an extension of time to give actual notice, the only requisite being that when such notice is given, the adverse party must have five days' notice of the presentation. If a party on the seventh day after the service of amendments should obtain a general order of court granting additional time to present the statement for settlement, and should within the extension, and upon five days' notice to the adverse party, present it for that purpose, if the construction of the section now contended for by plaintiffs is correct, it would apply in the given case and defeat the right to the settlement, as the effect of the extension, under respondent's theory, would be to limit the moving party to a delivery of the statement to the clerk for the judge. He could not present it upon actual notice, because, under plaintiffs' contention, as he obtained the order of extension at a time when he could not have given actual notice, the court

was without power to extend it for that purpose. This is not the understanding of the profession as to the meaning of the section, nor is it the practice under it, and no satisfactory reason is advanced now why the construction urged should be placed on it. Such a construction would not come within the intent or spirit of the section.

"It is claimed, as we understand it, that the notice served on plaintiffs by defendant was to the effect that the proposed statement and amendments would be presented on actual notice. We do not so understand it. It simply notified plaintiffs that 'in due time' defendant would present them for settlement. It contained no date or specified time when the presentation would be made, and the statement that they would be presented 'in due time' was evidently used in connection with the notice of non-acceptance, as indicating that defendant intended to pursue the general course required by the statute as a result of such non-acceptance. The language used was general and applied to either mode of presentation which the section permitted.

"The objection to our consideration of the settled statement on the ground urged we think untenable.

"This preliminary objection disposed of, brings us to a consideration of the merits of the appeal.

"The defendant is a corporation operating extensive shops and factories in Sacramento and employs therein a large number of men. Robert C. Douglas was an employee of the defendant on April 30, 1900, on which date he was injured by a piece of timber thrown from a gang-saw operated by another employee of defendant in that portion of the factory known as the planing-mill, from the effects of which he died. Deceased was at the time of his death 53 years of age, in full possession of all his faculties and members, and had up to the time of his injury and death been for some twenty years in the employ of defendant as a skilled laborer, working in its car machine-shop.

"At the lower or south side of this machine-shop, near the center, was a door, and at the west side of the door and near to it was the bench at which the deceased worked, his employment being to mark irons to be drilled by other employees in the shop where he was working. Immediately to the south of this car machine-shop, and separated therefrom by an

intervening roadway or track thirty feet wide, was the plan-
ing-mill building, in which was operated the gang-saw re-
ferred to.    On the north side of the planing-mill building
was likewise a door, located almost opposite to the door in
the south side of the building where deceased was employed.
On the south side of this planing-mill building was still an-
other door opposite the door at the north side thereof.    Im-
mediately to the south of the planing-mill building and
fronting the south door thereof was one of the waterclosets
used by the employees of the defendant company.    It was
not the custom to keep the doors of the planing-mill closed,
and some of the employees of defendant from other of its
shops in the vicinity passed through the mill-building on
various errands.    It appears also that Douglas frequently
passed through there.

"Coming now to the time of the accident.    The first that
was noticed of Douglas in the planing-mill building was
immediately that he was injured by the piece of timber
thrown by the gang-saw.    When struck he was opposite the
north door of the mill some ten or fifteen feet from the saw.
This saw was located to the west of said door, was of
the best manufacture and approved pattern, and was operated
by competent men, but the evidence showed that, in com-
mon with all gang-saws, it would occasionally in its opera-
tion, where a thin or warped piece of lumber was being
sawed, throw pieces backward, and that it was from a warped
piece so thrown back that Douglas was injured.    It was
necessary to have the gang-saw located as it was, in proximity
to a track run beside it, over which lumber and materials were
brought in push-cars to feed it, and thereafter reloaded in
said cars and taken to wherever it was further required in
the mill.    At the time of the accident there was lumber lying
near the saw across the north doorway to be used at the saw.

"While the evidence does not directly disclose what busi-
ness Douglas had in the planing-mill when injured, it may be
assumed that there was evidence to warrant the jury in
finding that he was returning through the mill from the
watercloset at the south side of it to his place of work in
the car machine-shop.

"As to the planing-mill, the evidence shows that at that
time the mill was in full operation; that at all times when so·

in operation there were from forty to fifty men employed in it; that two tracks ran into it from east to west, over which trucks loaded with lumber were constantly being run; that the mill was filled with machinery of various descriptions in operation; that there were no regular pathways through the mill from the north to the south doors and such as there were were usually blocked; that the central portion of the mill particularly was filled with machinery, benches and tables, hand-trucks of lumber upon the tracks, and lumber and material piled around the saws, planers, boring machines, etc.  It was, by reason of the machinery and other appliances, the movement of employees, the vast quantities of material handled at the machines and transferred from one point to another, and the general activities of the business, quite a crowded and obstructed place.

"As to the approaches to the waterclosets used by the employees.  The evidence shows that there were at least three other routes than the one taken by deceased in going to and returning from the closet at the rear of the planing-mill. Mentioning two of these in a general way, they were routes from the machine-shop through the south or west door thereof, along the passageway between the machine-shop and mill, and thence around either the east or west side of the latter building to the closet at the rear thereof.  Still another route, open to deceased, or any other employee of the machine-shops, proceeded from the north end of said shop upstairs and thence south along the upper story of the machine-shop and planing-mill to a closet located immediately above the one at the rear of the ground floor of the mill building from which deceased was apparently returning when injured.  There was no evidence that any employee in the car machine-shop, or in any other department of defendant's business in that vicinity (and there were others), ever took the route through the planing-mill, either to or from the closet at the rear thereof, which was being taken by the deceased when the accident occurred; nor any evidence that they ever went through the mill for that purpose.  On the contrary, the evidence shows that the co-employees of the deceased in the car machine-shop either proceeded from the south or west door thereof and went around on the outside of the mill on the east or west side routes to which we have heretofore

referred or went upstairs and along the upper story of the building on the other route above indicated. These are the principal and controlling facts in the case, and all that are necessary to be stated in order to apply propositions of law which are determinative of this appeal.

"The gist of plaintiffs' action is that the defendant provided an unsafe and dangerous way through which it was necessary for its employees in the car machine-shop to pass while going to and from the watercloset, and that deceased was injured while using such way for that purpose.

"Defendant at the close of all the evidence in the case moved the court for a nonsuit. The motion was made upon two grounds—first, that in using the way to and from the closet through the planing-mill deceased assumed the ordinary apparent risks attending that route, and second, that it appearing from the evidence that deceased had a choice of two routes to and from the closet, one of which—up the stairs from the machine-shop and along the upper floors of the said shop and the planing-mill—was safe, and the other—the way through the planing-mill which he took—was dangerous, that in using the perilous rather than the safe route he was guilty of contributory negligence which barred a right of recovery for his death. The motion was denied, and the ruling of the court in that respect presents the important question for consideration on this appeal. The facts in the case are not disputed, the only dispute being as to the inference which should be drawn from them, and we think that the only legitimate inference which could be drawn is that they disclose no liability on the part of defendant, and hence the motion for a nonsuit should have been granted.

"While two grounds are urged for the nonsuit, and while we entertain but little doubt that under the evidence the motion could have been granted on both, we do not discuss the matter of assumption of risk by the deceased in passing through the planing-mill under conditions of danger apparent to any man of ordinary intelligence and prudence, because it is beyond debate that upon the second ground, that of contributory negligence, the court should have withdrawn the case from the jury.

"The evidence shows beyond any question that the defendant had provided a safe and secure way to a closet for the

employees of the car machine-shop from the stairway on those premises up and along the upper story of the building. Having done so, it had done all that the law cast upon it, and it was the duty of the deceased when occasion required to take that safe way. When a safe way is provided by an employer and a dangerous way exists, if an employee chooses to take the dangerous way and is injured, he is guilty of contributory negligence as a matter of law. This is the rule universally recognized. As said: 'Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover. An employee must take care of himself as well as the master must take care of his duties and his employees. These obligations are mutual, and it is the law that if a man voluntarily puts himself in a dangerous position, does so unnecessarily when there are positions in connection with the discharge of his duties which are safe which he can be placed in, he cannot recover damages for the injury to which he has contributed by his own negligence." (Bailey on Personal Injuries, secs. 1123, 1124.) In *Hoffman* v. *American Foundry Co.*, 18 Wash. 287, [51 Pac. 385], the rule is expressed: 'Where there are two methods by which a service may be performed one perilous and the other safe, an employee who voluntarily chooses the perilous rather than the safe one cannot recover for an injury thereby sustained.' And in *Dandie* v. *Southern Pacific Co.*, 42 La. Ann. 686, [7 South. 792]: 'The servant cannot recover where his own want of care has contributed to the injury. If among the different modes of performing a duty he selects the most dangerous, which unnecessarily exposes him to danger, he is responsible for the selection.'

"It it hardly necessary to quote further from the authorities, but the following are cited: Labat on Master and Servant, sec. 333, p. 839; *Colorado C. and O. Co.* v. *Carpita,* 6 Colo. App. 248, [40 Pac. 248]; *Sladky* v. *Marinette L. Co.*, 107 Wis. 250, [83 N. W. 514]; *Sauer* v. *Union Oil Co.*, 43 La. Ann. 699, [9 South. 566]; *Richmond and D. R. Co.* v. *Bivins*, 103 Ala. 142, [15 South. 515]; *Fritz* v. *Salt Lake and O. G. etc. Co.*, 18 Utah 493, [56 Pac. 90]; *Wilber* v. *Wisconsin Central R. Co.*, 86 Wis. 535, [57 N. W. 356].

"Applying this rule to the undisputed facts, as we have said, there can be no question that under the evidence a way upstairs reasonably safe and free from danger was provided for the use of deceased and his co-employees in the machine-shop, and it is equally clear that the way the deceased usually took through the planing-mill was attendant with risks and dangers and hence unsafe. To undertake to pass through the planing-mill when it was in full movement—its planers, saws and other machinery in operation; trucks, push-carts, tables, benches, lumber and material occupying practically the entire mill; with no distinct passageway through it, and such ways as there were so blocked that one would have to pick a devious or uncertain route over or around permanent and temporary obstructions—was so obviously attendant with risk and danger as not to be open to discussion on that point.

"It is true that the route through the planing-mill was more convenient as a direct route for the deceased than the route upstairs or, in fact, any of the other routes taken by his co-employees in the machine-shops to the closets. The matter of convenience, however, could not qualify the rule that he should have taken the safe route. The mere fact that the dangerous way he took involved less trouble and was more direct than the safe route which was open to him furnished no excuse for not taking the latter. (Labat on Master and Servant, sec. 333, p. 841.)

"It is claimed, however, by respondent that this rule requiring an employee to select the safe route has no application to the case at bar because it is insisted that there was no evidence that the deceased knew of any other route to a watercloset than the one he took through the mill. It is true there is no direct evidence to this point, but we do not think that it was necessary. It is to be presumed that the deceased knew it, and aside from the presumption in view of the danger that was apparent to him as attending the route he was invariably taking, it was his duty in the exercise of ordinary care and prudence to have ascertained whether there was not a safer way which he might take, and that there was he could have ascertained by the slightest inquiry. There were employed in the car machine-shop where deceased worked, as ·his fellow employees, upwards of

one hundred men. Of these employees, not one of them took the route deceased took to the closet. In fact, the evidence does not show that any employee of the defendant in any of its departments took that route for that purpose; that deceased alone took it. At the time of the accident deceased had been in the employment of defendant in the car machine-shop for twenty years, and was familiar with the premises. Under these circumstances, as a man of ordinary observation, he must have been familiar with the various places and avenues which were provided for the benefit of the employees of the shop where he worked, and their use of them, and it would only be indulging in a natural and reasonable presumption to conclude that he did. But independent of the presumption, it was his duty to ascertain whether a safe way to a watercloset had been provided by the defendant for the benefit of himself and his co-employees. He knew that it was his employer's duty to do so, and he knew that the way he was taking did not fill the legal requirement, but was perilous. He had no right to assume that the way he was taking was the only way. No one suggested to him that it was; he selected it for himself, and seems to have been the only one who used it for the purpose. Every time he passed through the planing-mill on his way to or from the closet he was confronted with the risks of injury which he was taking by using that route. Under these circumstances it ought to have suggested itself to him as a man of ordinary intelligence that the defendant, as the law required it to do, had provided a safer route, and as a prudent man it was his duty to inquire whether it had or not. He could not go on using the perilous route, heedless of its dangers, when a simple inquiry would have placed him in a. position to avoid them. The danger he was incurring was a circumstance calling on him, in the exercise of ordinary care and prudence, to inquire if there was not a safer way, and his failure to do so when inquiry would readily disclose that there was a safer route was negligence of a contributory character. One who has actual notice of circumstances which are sufficient to put a prudent man on inquiry as to a particular fact, has constructive notice of the fact itself, if he might have ascertained it by making the inquiry. (Civ. Code, sec. 19.) There can be no question but that the circumstance of danger from the way he was

pursuing placed the deceased upon inquiry, and as that inquiry would have informed him of the fact that there was a safe way, in legal contemplation what he could have learned he knew.

"Many other points are presented by counsel, but from the conclusion we have reached it is unnecessary to discuss them.

"In our judgment the court should have granted the motion for a nonsuit on the ground urged by appellant, that the evidence as a matter of law showed that the contributory negligence of deceased was the cause of his injury and death, and that, therefore, plaintiffs were not entitled to recover.

"The judgment and order are reversed and the cause remanded for a new trial.

"We concur: Henshaw, J., McFarland, J., and Lorigan, J."