[L. A. No. 3759. Department Two.—December 4, 1916.]

EDITH E. HONTZ, as Administratrix of the Estate of GEORGE A. HONTZ, Deceased, Respondent, v. SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY (a Corporation), Appellant; SOUTHERN CALIFORNIA LUMBER COMPANY (a Corporation), Respondent.

[L. A. No. 3761. Department Two.—December 4, 1916.]

EDITH E. HONTZ, as Administratrix of the Estate of GEORGE A. HONTZ, Deceased, Respondent, v. SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY (a Corporation), Defendant; SOUTHERN CALIFORNIA LUMBER COMPANY (a Corporation), Appellant.

NEGLIGENCE—DEATH OF BRAKEMAN—CONTRIBUTORY NEGLIGENCE—MATTER OF LAW.—Where the tracks of a railway company, for convenience in the handling of lumber, were sunken below the surface of a lumber-yard in a trench or pit or open subway to such depth that

flat-cars on them were about level with the lumber-yard floor, box-cars standing many feet above it, and across the pit there being a drawbridge which, when the railroad operations were not under way, was lowered to facilitate the transportation of lumber from one part of the yard to the other, the pit extending in an easterly and westerly direction, and the drawbridge in a northerly and southerly direction, and being hinged upon the southerly side, and at times when lifted sagging over the pit so as to be dangerously near the sides of passing box-cars, but not flat-cars, an experienced brakeman and member of a switching crew, whose duty it was to go upon the premises of the lumber company, place empty cars at desired positions when loading for the lumber-yard, and carry away on the main line the loaded cars, was guilty of contributory negligence, as a matter of law, which defeats a recovery for his death, in leaving a position of perfect safety on the open platform, on the north side of the track, at which point he could have performed his duty, and, as the engine with two flat-cars and one box-car passed him, in running across the flat-car and attempting to climb a ladder on the box-car, in which position he was struck and killed by the drawbridge, the danger of which he had been familiar with for a long time and he being under no duty to leave his first station.

ID.—NONLIABILITY OF LUMBER COMPANY—OBVIOUS DANGER—SAFE PREMISES.—In such a case the lumber company was not guilty of negligence, for even if the raised drawbridge could be said to be a danger, it was an obvious danger well known to the deceased and dangerous only to one recklessly attempting to mount the top of the box-car; and the lumber company owed the deceased no duty other than an exercise of reasonable care and caution to see that the premises were in safe condition.

ID.—RECKLESSNESS OF DECEASED — CONTRIBUTORY NEGLIGENCE — QUESTION OF LAW.—While the question whether or not one has been guilty of contributory negligence is usually a question of fact for the jury, where the material facts were absolutely without conflict and showed that the deceased's conduct amounted to recklessness directly contributing to his death, the question was one of law.

ID.—MOMENTARY FORGETFULNESS OF DANGER.—Momentary forgetfulness by the deceased of the danger occasioned by the drawbridge is no excuse for his conduct; and whether he was negligent in this regard, or in taking the chance and risk that he was agile enough to reach the top of the car before its ladder passed under the drawbridge, were not questions to be resolved by the jury.

ID.—SAFE PLACE TO WORK—CHOICE OF DANGEROUS WAY.—It is a universal principle that when a safe way has been provided for an employee for the performance of an act, and another dangerous way exists, if the employee chooses to take the dangerous way and is injured, he is guilty of contributory negligence as a matter of law.

ID.—DUTY OF EMPLOYER—CARE REQUIRED.—It is not a part of the duty
of the employer to furnish his employee with an absolutely safe
place to work. It is to be reasonably safe so far as reasonable care
can make it in view of the nature of the employment.

ID.—ROSEBERRY ACT—COMPARATIVE NEGLIGENCE.—The provision of the
Roseberry Act (Stats. 1911, p. 796), that "the fact that such em-
ployee may have been guilty of contributory negligence shall not bar
a recovery therein where his contributory negligence was slight and
that of the employer was gross, in comparison," has no application
where, if the employer was guilty of negligence at all, it was
extremely slight as compared with the very gross negligence of the
employee.

ID.—VERDICT AGAINST LAW—VIOLATION ON INSTRUCTIONS.—Where a ver-
dict rendered by a jury does violence to the instructions which the
court gave the jury, it is against law.

APPEALS from judgments of the Superior Court of Los
Angeles County, and from orders denying a new trial. W. D.
Dehy, Judge presiding.

The facts are stated in the opinion of the court.

James E. Kelby, Wilfred M. Peck, A. S. Halsted, and
Pennell Cherrington, for Appellant San Pedro, L. A. & S. L.
R. R. Co.

E. S. Williams, for Appellant, Southern California Lum-
ber Company.

Crouch & Crouch, for Respondent, Edith E. Hontz, as
Administratrix.

HENSHAW, J.—George A. Hontz, an experienced brake-
man, in the employ of defendant, San Pedro, Los Angeles and
Salt Lake Railroad Company, while a member of a switching
crew engaged in moving cars in the lumber-yard of defend-
ant, Southern California Lumber Company, was killed. His
administratrix sued both corporations for damages. Trial be-
fore a jury resulted in a verdict in her favor. From the
judgment which followed and from the order denying their
motions for a new trial the defendants have taken their sepa-
rate appeals. Certain of the legal questions presented upon
these appeals are common to both cases. Others arising out
of the fact that the deceased was the employee of one of the

defendants and was but a licensee under invitation upon the premises of the other defendant, are different. But as, of course, the facts in both cases are identical, the appeals for convenience may be considered together.

Deceased, as has been said, was an experienced brakeman and member of a switching crew, whose duty it was to go upon the premises of the lumber company, place empty cars at designated positions for loading in the lumber-yard, and carry away onto the main line the loaded cars. The tracks of the railway company, for convenience in the handling of the lumber, were sunken below the surface of the lumber-yard in a trench or pit or open subway. This was at such a depth as to bring the flat-cars to about the level of the lumber-yard floor, the box-cars of course standing many feet above it. Across this pit was a drawbridge which, when the railroad operations were not under way, was lowered to facilitate the transportation of lumber from one part of the yard to the other. The pit extended in an easterly and westerly direction; the drawbridge in a northerly and southerly direction. It was hinged upon its southerly side and was raised to an upright position when the switching was in progress. At times it sagged somewhat and leaned a trifle out over the pit. This sagging presented no feature of peril when flat-cars only were being handled, but it brought the bridge in perilous proximity to the sides of box-cars. This was all known and thoroughly understood by the switching crew, including the deceased, and had been a matter of not infrequent conversation and comment between them. What may be called the main line of the switching-track lay to the east of this bridge. A short distance to the west of the bridge this main line switch-track forked into spur-tracks known as 3 and 2. The switch which was thrown to shift the cars from one spur to the other was to the west of the bridge, and the switch-bar was in a pit also to the west of the bridge, but on an open platform north of the track. The bridge at the time of the accident was raised. There was evidence that it leaned slightly toward the track. Facing east the track curved to the left hand or northerly, and one standing upon the north platform opposite the bridge was therefore visible from the engine. The switch-train on spur-track 3 began, under orders, to move easterly. It was composed of the engine, two flat-cars and a box-car. It was to carry these cars past the switching

point. The switch was then to be thrown and the cars backed down on spur-track 2, where the train was to pick up other cars. The deceased, in the performance of his duty, was standing upon the open platform on the north side of the track, some distance to the west of the bridge and near to the switch pit. He was alone there, and when the rear box-car had passed the switch could have signaled to the train to stop and could have thrown the switch, thus enabling the train to back down onto the spur-track 2. He was the only man there, and it is in evidence that his duty called upon him to do these things. However, for some reason utterly unexplained, as the train was thus moving slowly eastward, the deceased ran across one of the flat-cars and proceeded to climb the ladder on the southerly side of the box-car. It was broad daylight. Hontz had been engaged in this occupation for several months and in switching for twenty-five years. It was the fact, and he knew the fact, that the switching operations, so far as track 3 were concerned, were conducted from the switching lever and pit on the north platform. He knew of the bridge. Indeed, it was conspicuously before him as he stood upon the north platform. He knew that when raised it sometimes sagged or leaned forward. He had himself spoken of the danger to be anticipated from this. He had talked with other members of his crew about it. Nevertheless, under no sudden stress of excitement or fear—indeed, under no call of duty—he left this position of absolute safety, where he both could signal to the engineer and throw the switch, and attempted to climb up the ladder of the box-car which was moving toward the bridge. The foreman of the switching crew, who was present and in charge of the crew, and who last saw the deceased upon the north platform, declared that "there was no duty I could conceive or that I knew of that called upon Mr. Hontz at the time of the accident or immediately before to be on the south platform of track No. 3." Hontz himself gave the signal that set the train in motion. He was at that time standing approximately eighty feet west of the switch. Thereafter he must have crossed to the south side over a moving loaded flat-car, and then have essayed to climb the ladder of the box-car which was upon the south side of that car at the end nearest to the bridge. His distance from the bridge when he made this attempt necessarily was

much less than eighty feet.   He had not reached the top when he was carried against the leaning bridge and killed.

### Los Angeles, No. 3761:

Appellant contends that absolutely no negligence upon its part is shown in this case; that even if the raised drawbridge could be said to be a danger, it was, first, an obvious danger well known to deceased, and, second, it was only a danger to one recklessly attempting to mount to the top of a box-car under the circumstances here presented, and appellant owed him no duty other than to exercise reasonable care and caution to see that the premises were in safe condition.   (*Schmidt* v. *Bauer*, 80 Cal. 565, [5 L. R. A. 580, 22 Pac. 256] ; *Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473, [1 Ann. Cas. 206, 77 Pac. 1001].)   So unanswerable is this, that the case of the lumber company may well be rested upon this single proposition and a reversal ordered accordingly.   For it was not incumbent upon this appellant to maintain its premises in a perfectly safe condition, and conceding that the drawbridge presented a danger, it was a danger known to the deceased—a danger whose risk he accepted and a danger for which injury could befall him only because of his own heedlessness.   But even if it be assumed, as for the purposes of the consideration to follow, it will be assumed, that the lumber company was negligent in the maintenance of this bridge, still it must be equally clear that deceased's negligence, amounting to recklessness, was a direct and contributing cause to his death.   Of course, as against this, respondent presents the familiar argument that the question whether or not one has been guilty of contributory negligence is usually a question of fact for the jury, and that in this case it was for the jury to say whether or not the deceased was so guilty.   It is quite natural, indeed it is necessary, that this contention should be advanced.   But if, in cases such as this, it is to be said that the question of contributory negligence is one of fact, it is extremely difficult to conceive of a case where it could be one of law.   Here the material facts are absolutely without conflict, and it is impossible to see how a rational mind can from that evidence draw any other conclusion than that the uncalled for action of this experienced brakeman in thus running a race with the moving train to reach the top of this car—an act which from all the evidence it was wholly unnecessary for him to perform—

could be. anything but negligence. Omitting from consideration the untenable proposition that the deceased's act was prompted by a desire for self-destruction, only one of two other views is at all possible. He either attempted to mount the box-car in momentary forgetfulness of the presence of the drawbridge, with which he was familiar and which a few moments before was confronting him, or, with memory of the situation, he took the chance and risk that he was agile enough to reach the top of the car before its ladder passed under the drawbridge. Respondent contends for both propositions, and insists further that the question whether the deceased was negligent, if he made the attempt under either view, was a problem to be resolved by the jury. Touching momentary forgetfulness, respondent concedes the general rule to be, as unquestionably it is, that such forgetfulness is in and of itself contributory negligence. But it is sought to place this case within the category of exceptions to this general rule—as in a case where the contributory negligence of a trainman was held to be a matter of fact for the jury when the man was injured by climbing the ladder of a car and was injured by a cattle-chute which the train was passing. But in that case the court, indulging in some general discussion as to whether or not as matter of law such a trainman should be charged with the duty of carrying in his mind every real and possible danger along a main-line track, rested its decision upon the proposition that it was debatable under the evidence whether the injured man knew of the danger, and approved an instruction to the following effect: "But if, on the contrary, you find that he did not know of this structure and its risks, and did not have sufficient means of knowledge so as to charge him with the consequences of actual knowledge—in other words, that the structure was unknown to him, and he had not sufficient knowledge to learn of it, and the danger that it occasioned to operatives—then you ought to find for the plaintiff." (*Dorsey* v. *Phillips & Colby Con. Co.*, 42 Wis. 591.) Such reasoning manifestly can have no applicability to the case at bar. Nor can the case of *Jacobson* v. *Oakland Meat etc. Co.*, 161 Cal. 425, 430, [Ann. Cas. 1913B, 1194, 119 Pac. 655], upon which also respondent relies. The general rule is there declared that momentary forgetfulness is no excuse. The cases so holding are cited, and the Jacobson case is differentiated and distinguished from them in the following

language: "Undoubtedly there was one element in all of those cases which is missing in this one, and that is the plaintiff's familiarity with the danger which he forgot. Plaintiff in this case had relied on his understanding with Monson that the guard would be replaced, and, lulled by his confidence in the performance of a clear duty by his superior officer, had forgotten its removal." But that the Jacobson case was not pronouncing and was not meant to pronounce any different rule from the familiar one is made manifest by the later cases of *Ergo* v. *Merced Falls Gas & Elec. Co.*, 161 Cal. 334, [41 L. R. A. (N. S.) 79, 119 Pac. 101], *Brett* v. *Frank & Co.*, 162 Cal. 735, [124 Pac. 437], and *Reynolds* v. *Los Angeles Gas & Elec. Co.*, 162 Cal. 327, [Ann. Cas. 1913D, 34, 39 L. R. A. (N. S.) 896, 122 Pac. 962].

Upon the second proposition, respondent contends that if the deceased took the chance and risk, it was still for the jury to say whether he was negligent in so doing. Herein respondent argues that it would not be disputed that "if a man was a quarter of a mile away in boarding the train, under such circumstances he would be in the exercise of ordinary care," and that therefore whether he was in the exercise of such care, having boarded it at a lesser distance from a known danger, was a matter of fact for the jury. The argument is self-destructive. If he boarded the car at a distance that made it safe for him to do so, neither he nor the lumber company was guilty of any negligence. If he boarded it at a distance which entailed risk, then manifestly this was his negligence, since he knew that risk and took the chance of avoiding it. For it is to be borne in mind that it was no call of duty which put the deceased under any compulsion to do the act which caused his death. It is a universal principle that when a safe way has been provided for an employee for the performance of an act, and another and dangerous way exists, if the employee chooses to take the dangerous way and is injured he is guilty of contributory negligence as matter of law. (*Kenna* v. *Central Pac. R. R. Co.*, 101 Cal. 26, [35 Pac. 332]; *Douglass* v. *Southern Pac. Co.*, 151 Cal. 242, [90 Pac. 538]; *Richmond etc. Co.* v. *Bivens*, 103 Ala. 142, [15 South. 515].) Directly in point upon this proposition is the case of *Ramsay* v. *Eddy & Sons*, 123 Mich. 158, [82 N. W. 127]. It is unusual to find a case which so closely parallels a case at bar. In that case, quoting from the syllabus: "Lum-

ber in defendant's yard was piled close to the railroad track, leaving only a small space between it and the sides of passing cars, and plaintiff, an experienced brakeman and switchman, threw the switch to enter the yard, and climbed on the side of the car when it was within a short distance of the lumber and was injured by being crushed between the car and the lumber." It was held that he was guilty of contributory negligence as matter of law. Such, also, is the declaration in *Baugham* v. *New York etc. R. R. Co.*, 241 U. S. 237, [60 L. Ed. 977, 36 Sup. Ct. Rep. 592]. In that case the deceased was a brakeman, between eighteen and twenty years of age. On the second day of his employment, while mounting a freight-car that was being transferred from the wharf of the company to a barge moored at the wharf, he was killed by being crushed between that car and other cars upon the barge. The car-tracks on the barge converged. By reason of this convergence the moving cars came in close and deadly proximity to each other. It was under these circumstances that deceased was caught and killed. The company pleaded as special defenses that the deceased was guilty of contributory negligence and had assumed the risk. The trial court held as matter of law that these pleas were well taken, and the judgment of the trial court was affirmed by the supreme court without dissent.

It follows herefrom that the judgment and order against the appellant Southern California Lumber Company must be and is hereby reversed.

### Los Angeles, No. 3759:

This is the appeal of the railroad company, the employer of the deceased. The only circumstance differentiating this case from the appeal of the lumber company arises from the fact that the deceased was in the employ of this appellant. Touching the duty of the employer to furnish this employee with a safe place to work, it should be unnecessary to point out that this duty bears intimate relation to the nature of the work itself. It is not a part of the duty of the employer to furnish his employee with an absolutely safe place to work. It is to be reasonably safe so far as reasonable care can make it in view of the nature of the employment. Here the employee had an exceptionally safe place for the performance of his duties. He could throw the switch from the north

platform.   He could have crossed over to the south platform by way of the flat-cars, or crossed the pit after the cars had passed, or he could have mounted a flat-car and remained thereon until the train was brought to a stand beyond the bridge.   He was under no compulsion of duty, as has been said, to climb the box-car ladder.   This appellant was therefore not negligent, but upon the other hand the deceased took a visible, obvious, and unnecessary risk from which his death resulted.   To the authorities above cited upon this proposition may be added *Kanawha & Mich. R. R. Co.* v. *Kerse,* 239 U. S. 576, [60 L. Ed. 448, 36 Sup. Ct. Rep. 174] ; *Reese* v. *Philadelphia & Reading R. R. Co.,* 239 U. S. 463, [60 L. Ed. 384, 36 Sup. Ct. Rep. 134, 10 N. C. C. A. 926] ; *Jacobs* v. *Southern Ry. Co.,* 241 U. S. 229, [60 L. Ed. 970, 36 Sup. Ct. Rep. 588].

Something is said in respondent's brief touching the applicability to the facts of this case of the Roseberry Act. (Stats. 1911, p. 796.)   The particular provision relied upon is that, "The fact that such employee may have been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison."   It is clear that this provision can have no applicability where, if the employer was guilty of negligence at all it was extremely slight as compared with the very gross negligence of the employee.

It follows herefrom that the motions of this appellant for nonsuit and for a directed verdict should have been granted, and that the verdict rendered by the jury does violence to the instructions which the court gave to the jury, and is therefore against law.   (*Declez* v. *Save,* 71 Cal. 552, [12 Pac. 722].)

The judgment and order appealed from are therefore reversed.

Melvin, J., and Lorigan, J., concurred.