[Civ. No. 1933.   First Appellate District.—March 3, 1917.]

ZANONA MATCHETTE et al., Respondents, v. CALIFOR-
NIA FRUIT CANNERS ASSOCIATION (a Corpora-
tion), Appellant.

Master and Servant—Safe Place to Work—Choice of Dangerous
Way—Contributory Negligence.—The duty of an employer to fur-
nish an employee with a reasonably safe place to work is fulfilled
when he exercises ordinary care for that purpose, and when a safe
way has been provided, and another and dangerous way exists, if
the employee chooses to take the dangerous way and is injured, he
is guilty of contributory negligence as a matter of law.

Id.—Death of Railroad Brakeman—Selection of Place of Obvious
Danger—Contributory Negligence.—In an action for the death of
a brakeman killed while switching cars in the yards of a canning
company, the deceased is properly held guilty of contributory negli-
gence, as a matter of law, where it is shown that he was an experi-
enced brakeman, and that he, in the performance of his duty, had
free choice of several positions, and selected one of obvious danger.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order deny-
ing a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Thomas, Beedy & Lanagan, for Appellant.

Preston & Preston, and Barrett & Thomas, for Respondents.

KERRIGAN, J.—Charles C. Matchette, a brakeman in the
employ of the harbor commissioners of the state of California
on its belt line railroad in the city and county of San Fran-
cisco, met his death while in the performance of his duties
as a member of a switching crew on the premises of the de-
fendant, the California Fruit Canners Association.   This
action was brought by his widow and minor daughter to re-
cover damages for his death, which is alleged to have been
caused by the negligence of the defendant.   The jury ren-
dered a verdict in favor of the plaintiffs and against the de-
fendant for the sum of five thousand dollars, and from the
judgment and from an order denying a new trial the defend-
ant appeals.

The first contention of the appellant is that the evidence fails to establish that any duty owed to the deceased by the appellant was left unperformed, or that it was guilty of any negligence whatever, but that, on the contrary, the evidence affirmatively shows that the death of Matchette resulted from his own negligence.   From the correctness of this contention we see no escape.

The record discloses the following facts: The defendant at the time of the injury complained of owned and maintained certain buildings situated in San Francisco, which it used in the operation of its business of canning fruit and for warehouse purposes.   Between these buildings was a space of some seventy-two feet or thereabouts upon which were constructed two spur tracks from the belt line railroad owned and operated by the state of California.   These spur tracks were standard gauge, and their length on defendant's property was approximately 210 feet.   At the point where these tracks entered the defendant's property they were built on a curve, the curve continuing a distance of some 120 feet, from which point the tracks ran straight for a like distance upon said property.   Parallel to the track throughout its entire length and on the westerly side of the cannery building there had been erected a platform, varying in width from the point where the track was straight to the place of the accident, and the edge of which was about four feet eight inches from the outer rail of the easterly spur track.   The tracks were laid upon a trestle about fourteen feet high, which rested upon the basement of the building, and the platform was about three feet six or seven inches above the level of the track. On the morning of February 23, 1911, the day of the accident, the switching crew of which deceased was a member had switched one car on to the westerly spur track on defendant's premises, and then pulled their train back into Beach Street, which bounds the south side of defendant's plant, and switched a large box-car loaded with cans upon the easterly spur track.   The switching equipment of the railroad consisted of an engine and a flat-car called a trailer.   The crew was composed of the engineer and fireman, two switchmen, and a foreman.   The deceased was one of the switchmen, and it was his duty on this occasion to spot the car that was being delivered, that is, to put it at a place on defendant's spur

track indicated by the foreman. When the train which caused the accident was being backed in it consisted of an engine, next the trailer, and the box-car that was being delivered. The trailer had a running-board at one end, upon which the other switchman—Conway, by name—took a position where he could receive and transmit to the fireman or engineer the signals given by the deceased. In the performance of his duties deceased took a position against the platform before mentioned, and as the train came in over the easterly spur track and swung on the curve the middle of the large box-car struck him and pressed him against the edge of the platform, causing his death. The evidence conclusively shows that the deceased had been in the railroad business for a number of years and was an experienced brakeman; that at the time of the accident he had been employed on the belt line road for several months as a member of the switching crew, and had been upon the defendant's premises many times before, and that he had on former occasions been accustomed to deliver large box-cars, such as the one that crushed him, upon this identical spur. The evidence further shows that the position which the deceased took was not necessary for the performance of his duties. The engine was in such a position that he could not signal directly to the engine crew, and it was his business only to instruct his fellow-switchman, who was on the trailer and who in turn would pass on the signal to the engine crew. There was no object to be served by his being upon the ground, the chief purpose of a switchman taking such a position being to couple or uncouple cars, or to give signals directly to the engine crew or throw switches—none of which acts were required of the deceased at this time, Conway being there for that purpose. The duty of deceased was merely to spot the car. In the performance of that duty he had free choice of several positions where he could have stood. He could have stood upon the platform, or he could have signaled from the side or top of the car, or he could have stood between the tracks.

Under these circumstances it is argued by the appellant that the deceased selected a place of obvious danger to perform his duties; that he knew, or ought to have known, that while a space of less than five feet between the outer rail and the platform on a curved track might leave room enough in the

case of a flat-car, that when a large car with its additional overhang such as caused his death was being switched in it was impossible for a man to stand there and avoid being struck by the car.

The duty of an employer to furnish an employee with a reasonably safe place to work is fulfilled when he exercises ordinary care for that purpose. Deceased was properly upon defendant's premises under an implied invitation. It was the defendant's duty to use reasonable care in providing a reasonably safe place for decedent to work, and, so far as the evidence shows, it fully discharged that duty. Deceased was an employee of the belt line railroad, and under the control of his superiors. The appellant could not instruct him as to the manner in which he should do his work. The deceased had assisted in bringing up the car which crushed him, knew its dimensions, and was an experienced brakeman, and he had a free choice as to where he should stand to spot from, and he chose a place of obvious danger. The location by defendant of the permanent structures necessary and convenient to accommodate its business near the tracks did not of itself constitute a danger; and even assuming that it did, it was obvious to the deceased, who, as we have said, was an experienced railroad man. The recent case of *Hontz* v. *San Pedro etc. R. R. Co.*, 173 Cal. 750, [161 Pac. 971], is in our opinion on all-fours with the case at bar. There the deceased was an experienced brakeman, and while a member of a switching crew engaged in moving cars in the lumber-yard of the defendant company was killed. Over a spur track in the lumber-yard there was a drawbridge which was raised to an upright position when switching was in progress. At times when raised the drawbridge sagged and leaned a trifle over a pit. This fact constituted no peril when flat-cars only were being handled, but it brought the bridge close to the side of box-cars. The bridge at the time of the accident was raised, and it leaned slightly toward the track. Decedent knew the position of the bridge, but for some unexplained reason in broad daylight, and without any necessity for so doing, he started to climb the ladder on the side of a moving box-car, and before reaching the top came into collision with the bridge and was killed. Mr. Justice Henshaw, in delivering the opinion of the court, said: "It is a universal principle that

when a safe way has been provided for an employee for the performance of an act, and another and dangerous way exists, if the employee chooses to take the dangerous way and is injured, he is guilty of contributory negligence as a matter of law.''

It is argued by plaintiffs, however, that the questions of negligence and contributory negligence were for the jury; and that as those questions were resolved in plaintiffs' favor, this court should not disturb the verdict and the judgment based thereon. The case last cited effectively disposes of this contention also, for it is there said: ''But if in cases such as this it is to be said that the question of contributory negligence is one of fact, it is extremely difficult to conceive of a case where it could be one of law.'' This statement of the law is applicable with equal force to the present case, for the facts and conditions upon which the question arises are identical. Here, although the distance between a car of ordinary size and the platform was not great, still it was perhaps sufficient for a brakeman using great care to stand there, but when large cars were switched in he could not do so without being struck; and, as before stated, the deceased was familiar with the premises, experienced, and had switched in like cars before, at which times he spotted from other positions. The entire evidence thus shows conclusively that the deceased was killed through his own negligence.

Untenable, also, is the contention of the plaintiffs that the defendant created a trap by failing to comply with the terms of a contract it had entered into with the Southern Pacific Railroad Company, under which the track was built, which in part provided that defendant was not to erect or maintain a platform nearer to the track than four feet eight inches. The rights of the parties hereto, as the trial court correctly instructed the jury, are in no manner measured by or dependent upon such contract. The obvious purpose of the provision in that contract was to leave a space that would accommodate large cars; and even if the provision had been complied with, the space would have been increased but a few inches, and the danger, for aught the evidence shows, would have been equally great, because any person who stood between the car and the platform when large cars were switched in was certain in any case to be struck.

In view of the conclusion we have thus reached it becomes unnecessary to notice the question of the proximate cause of the injury and further questions presented by the briefs.

The judgment and order are reversed.

Lennon, P. J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 2, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 30, 1917.