[Civ. No. 13601.   First Dist., Div. One.   Apr. 22, 1948.]

HINCHMAN, ROLPH & LANDIS (a Copartnership), Respondent, v. IRA GOLDING et al., Appellants.

Morris M. Grupp for Appellants.

A. Brooks Berlin and Alvin A. Lobree for Respondent.

WARD, J.—This is an appeal from a judgment ordering that plaintiff Hinchman, Rolph & Landis, a copartnership, recover from defendant Ira Golding, individually and doing business under the firm name and style of Cleaning Equip-

ment and Repair Company, the sum of $2,554.30, with interest and costs.

The complaint herein sets forth that one Sholaam Barash, doing business under the name of Ideal Hat and Novelty Company, 767 Market Street, San Francisco, suffered a fire loss on December 5, 1945, "by reason and as the proximate result of the negligent and careless installation" of a boiler unit installed on or about August 14, 1945, by defendant "in that the wooden floor of said premises in and upon which said boiler was set and underneath and at the base of said boiler was not covered or protected by any sheet metal, tiling, concrete, brick or any other adequate insulating material, thereby resulting in a lack of protection from and against the heat coming from and generated by the use of said boiler. . . . the heat from said boiler set fire to said unprotected wooden floor under and at the base of said boiler." The complaint further set forth that the value of the stock so destroyed was $3,525.14, and that as at the time of the fire Barash had in full force and effect three policies of insurance issued by National Liberty Insurance Company of New York, which said corporation paid Barash $2,554.30 in full settlement and Barash subrogated his action for the fire loss to said corporation. Plaintiff as general agent for the insurance company brought suit.

As a second cause of action a violation of the San Francisco Municipal Code, section 1536 of part II of chapter 1 (referred to as the Building Code) was set forth. It reads as alleged in the complaint: "Boilers exceeding 10 H. P., used for generating steam for heating or motive power, and large furnaces, shall not be placed on any floor above the cellar of any building, unless the same are set on metal beams and arches and such beams shall be built into the walls. Every steam boiler shall be provided with a tank or other receptacle of sufficient capacity to hold at least a sufficient supply of water to last six (6) hours.

"Whenever steam boilers, water heaters, large cooking ranges, furnaces, candy kettles, laundry stoves set in brick, or other structures in which fire is maintained, are set on any wooden floor, such floor shall be protected by a continuous sheet metal bearing plate not less than three-sixteenths (3/16) of an inch thick, all joints of which shall be securely riveted, and the top of such plate shall be covered with not less than seven (7) inches of brick or concrete." It was further alleged "that at the time of the installation of said boiler,

and at all times thereafter, defendants above named failed and neglected to comply with the provisions of said City Ordinance in that said floor upon which said boiler was placed, and particularly underneath and at the base thereof was not protected by any sheet metal, concrete, brick, tiling or any similar or substitute materials."

A demurrer was not filed but the answer alleged "That plaintiff has no legal capacity to sue. . . . That the said Sholaam Barash has no legal capacity to sue." That Sholaam Barash has no legal capacity to sue was not an issue in the case. Barash was not named as a party to the action. Plaintiff, Hinchman, Rolph & Landis, had capacity to sue as alleged in the complaint. This issue appears to have been settled by the parties during the trial. The following appears in the transcript: "[Attorney for defendant]: Well, we are willing to stipulate that the plaintiff is a partnership, and that the insurance in question was issued. We are willing to stipulate that some insurance was paid. Of course, the question of proof as to how much is a question of fact. *We are willing to stipulate that the subrogation claim has been assigned to the plaintiffs."* (Emphasis added.) In the opening brief the following appears: "Since the chief issue raised by this appeal is the contributory negligence of respondents' subrogor, appellant will confine his statement of the facts to the testimony of respondents' witnesses."

The issues raised by defendant is that "the subrogor Sholaam Barash was himself careless and negligent" and that he advised defendant he had obtained the necessary authorization (San Francisco Municipal Code, § 1536), and that Barash "further was himself careless and negligent in and about the matters and things complained of in that he left the premises wherein said boiler was located without turning off the fuel supply from said boiler and permitting said boiler to remain lighted for a period of approximately nine and one-half hours without anyone in the premises in attendance, thus causing a fire to occur at 2:30 A. M. and that such carelessness and negligence on the part of the said subrogor contributed to and were direct and proximate causes of the alleged damage, if any such there were." Barash testified to the contrary. Whether Barash assumed the duty of obtaining a permit or whether defendant failed to obtain one is not the real question in this case. Defendant installed a boiler "exceeding 10 H. P." contrary to the terms of the ordinance.

Irrespective of the protective measures set forth in the ordinance, defendant admits, at least for the sake of argument, that the base was improperly insulated, defective and not properly prepared. There is evidence to prove that this admission was in fact true. A person in the business of installing boilers is negligent, if, as the evidence shows in this case "it was not properly insulated between the boiler and the floor. . . . The insulation was not such as to keep the heat from the boiler from penetrating the floor." The trial court found "that said boiler unit was then and there improperly insulated and negligently installed on said premises by said Ira Golding, doing business as aforesaid, in that the wooden floor of said premises in and upon which said boiler unit was set, and the wooden flooring underneath and at the base of said boiler was not covered or protected by any sheet metal, tiling, concrete, brick, or any adequate insulating material, thereby resulting in a lack of protection from and against the heat coming from and generated by the use of said boiler unit."

■ Defendant relies primarily upon the claim that "Barash [as subrogor] was guilty of contributory negligence." It may be assumed, so far as this case is concerned, that the employee who was directed to turn off the heating instrument was the agent of Barash and that his observations made from time to time were in fact the observations of the employer. (1 Cal.Jur. § 126, p. 848.) The subrogor, Barash, in response to the question: "And prior to this fire did you note as to whether or not there was any insulation, or any insulation materials under the boiler in question to·insulate it from the floor?" answered: "As far as I know, we had the brick underneath the boiler. Q. You don't know the extent of the brick, do you? A. No, I don't. Q. Was there any asbestos mat, or any other properties that you know of, under the boiler? A. As far as I can remember, there was not. Q. There was no sheet metal there underneath it, or anything? A. No, I know there was no sheet metal. Q. Now the floor of the plant itself was of what material? A. Wood." It is reasonable to draw an inference that the milliner Barash relied upon the judgment of the boiler contractor to make a safe installation.

Defendant cites three cases in which the appellate court ruled that contributory negligence as a matter of law was the proximate cause of accidents involved due to the injured party's heedless disregard of precautions for his own safety.

(*Kauffman* v. *Machin Shirt Co.*, 167 Cal. 506 [140 P. 15]; *Globe Indemnity Co.* v. *Hook*, 46 Cal.App. 700 [189 P. 797]; *Hontz* v. *San Pedro etc. R. R. Co.*, 173 Cal. 750 [161 P 971].) These cases appear to involve well known dangers in face of which one must use ordinary care to avoid the peril, and that only where no inference other than contributory negligence can be drawn from the facts is the question of contributory negligence one of law.

Fairly recent opinions are indicative of the new and prevailing attitude in the matter of a plaintiff's contributory negligence as a matter of law. In *Anthony* v. *Hobbie*, 25 Cal. 2d 814 [155 P.2d 826], judgment on a directed verdict for defendant was reversed, the court stating at page 818: ". . . cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; . . . that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citing 18 cases.]" This language is quoted in *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1], where a judgment nonsuiting plaintiff was reversed, the court stating at page 838: "Plaintiff was justified in leaving the east curb of Broadway inasmuch as the traffic signal was in her favor. Whether or not she should have observed that the streetcar had started forward at that time, and if it had, whether she was aware of the danger, were for the jury to decide."

From the foregoing it appears that Barash was not guilty of contributory negligence as a matter of law. The care a plaintiff must exercise must be judged in the light of all of the surrounding circumstances. If Barash was misled into a feeling of safety by defendant's own negligent acts, he cannot be held guilty of contributory negligence as a matter of law.

The appeal is from the whole of the judgment and from the order denying defendant's motion for a new trial. The order denying a new trial is not appealable and therefore is dismissed. The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.